DECISION AND JUDGMENT ENTRY
{¶ 1} Judith Mae Gutheil Neighborgal appeals the Pickaway County Court of Common Pleas' decision to grant summary judgment to the appellees. Judith asserts that the trial court erred by not considering Evid.R. 301 in its interpretation of the inter vivos trusts at issue and improperly applied the rules of construction to such trusts. We disagree because the language of the trusts is clear and unambiguous.
 {¶ 2} Accordingly, we affirm the judgment of the trial court.
 I. {¶ 3} On June 10, 1996, Betty Jean Gutheil and Robert Charles Gutheil created trusts in which they left their daughter, Judith May Gutheil Neighborgall, $100 if she appeared to collect the sum within six months of the second grantor to die. After Robert died on May 14, 1998, his June 10, 1996 trust disposed of all the property so that Betty Jean had the full use and benefit of the property and the powers of appointment. Betty Jean used the powers of appointment to create the "Gutheil Trust" on February 27, 2001. That trust contains the assets from Robert's estate.
 {¶ 4} Also on February 27, 2001, Betty Jean amended and restated her trust of January 10, 1996. In the Amended and Restated trust, Betty Jean divided her estate among her eight children, including Judith.
 {¶ 5} On January 17, 2002 Betty Jean executed amendments to both the Gutheil Trust and her Amended and Restated Trust. The amendments, in identical language, state: "I, BETTY JEAN CLUFF GUTHEIL, of the City of Lockbourne, Pickaway County, Ohio, do make, publish and declare the following as and for the First Amendment to the Gutheil Trust [Amended and Restated Trust] established by me as Grantor and Trustee on February 27, 2001. 1. I hereby added the following Paragraph H to Article IV [Paragraph J to Article IV] thereof: H. Any other provision of this Trust to the contrary notwithstanding, the Grantor's daughter, JUDITH MAY GUTHEIL NEIGHBORGALL, and her lineal descendants shall be presumed to have predeceased the Grantor, and all of the assets passing under this Trust shall pass to the other named beneficiaries as if JUDITH MAY GUTHEIL NEIGHBORGALL and all her lineal descendants had predeceased the grantor. 2. In all other respects I hereby ratify and confirm my said Trust."
 {¶ 6} On July 14, 2002, Betty Jean died testate. The co-executors and co-trustees of Betty Jean's estate and the Gutheil and Amended and Restated trusts commenced this action in the Probate Division of the Pickaway County Court of Common Pleas. They prayed for judgment declaring that Betty Jean effectively disinherited Judith and her lineal descendants as a consequence of the January 17, 2002 amendments to the two trusts. Judith argued that the amendments merely show Betty Jean's intent to create a rebuttable presumption of Judith's death as an estate planning tool.
 {¶ 7} Both the appellees and Judith filed motions for summary judgment. The trial court granted appellees' motion, overruled Judith's motion, and assessed costs against Judith. Although not required by law to do so, the trial court favored the parties with a "Memorandum Decision" explaining its rationale for its judgment. In its decision, the trial court acknowledged that Ohio law permits a decedent to disinherit an heir, even a child, but such disinheritance should be made only by express words or necessary implication. Crane v. Doty (1853), 1 Ohio St. 279. Turning to the rules of construction, the court rejected Judith's argument that the Ohio Rules of Evidence apply to the interpretation of wills and trusts. Instead, the court found that "[t]he rules of construction focus on the state of mind, knowledge and understanding of words used by the ordinary layman when he or she wrote the instrument." The trial court then applied the ordinary meaning to the terms "presume" and "shall" in the amendments and found that Betty Jean, as the grantor, had "strongly stat[ed] an intention to bypass Judith from any inheritance."
 {¶ 8} Judith appeals and asserts the following assignments of error: "[I.] The court below erred in ruling that the Ohio Rules of Evidence have no application in a declaratory judgment action seeking construction of an inter vivos trust. * * * [II.] The court below failed to properly apply rules of construction set out in Townsend Exrs. v. Townsend [(1874), 25 Ohio St. 477] andCrane v. Doty [(1853), 1 Ohio St. 279] * * *." In addition, in appellant's reply brief, Judith argues that this court may not consider the June 10, 1996 trusts created by Betty Jean and Robert because they are not part of the "four corners" of the trusts at issue.
 II. {¶ 9} Judith argues that the language of the January 17, 2002 amendments, "shall be presumed to have predeceased the grantor", creates a rebuttable presumption and does not contain express words of disinheritance. She notes that express words of disinheritance were used elsewhere in the trusts, thus demonstrating that Betty Jean knew the appropriate, unequivocal language that would achieve such purpose.
 {¶ 10} In reviewing the propriety of a summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we accord no deference to the trial court's decision in answering that legal question. Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412. See, also, Schwartz v. Bank One, Portsmouth, N.A.
(1992), 84 Ohio App.3d 806, 809.
 {¶ 11} In the interpretation and construction of language included in trusts and wills, the singular function of the court is to determine the intent of the person executing the document. If the intent is manifest from the words and phrases of the document(s) it prevails against whatever consequences flow therefrom. These principles survive. Thus, extrinsic evidence is admissible only when the language of the trust creates doubt as to its meaning. Oliver v. Bank One, Dayton N.A. (1991),60 Ohio St.3d 32, paragraph one of the syllabus.
 {¶ 12} The principles of will construction also apply to construction of inter vivos trusts. Ohio Citizens Bank v. Mills
(1989), 45 Ohio St.3d 153. The express language of the instrument generally provides the court with the indicators of the grantor's intentions. Casey v. Gallagher (1967), 11 Ohio St.2d 42. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator. Such intention must be ascertained from the words contained in the will. Carr v. Stradley (1977), 52 Ohio St.2d 220.
 {¶ 13} In this case, each of the parties moved the trial court for summary judgment and inherently agree that the case is one of those contemplated by Civ.R. 56. We agree that the intent of Betty Jean is determinable from the documents themselves.
 A. {¶ 14} We first address Judith's claim raised in her reply brief; namely that this court may not consider the 1996 trusts created by Betty Jean and Robert. Judith's argument that the language of the 1996 original trust is irrelevant because it is not within the "four corners" of the 2001 amendment is disingenuous. When a trust is amended, as here, the "four corners" necessarily and inevitably includes the core documents as well as the adjuncts.
 {¶ 15} The 1996 trust agreement recites differential treatment of Judith than that of the 2001 trusts and 2002 amendments to those trusts. In the 1996 trust, Judith was granted $100 after both Betty Jean and Robert died. This $100 grant contained the condition that if Judith were "deceased or [could not] be located by the Trustee within reasonable effort within 6 months of the second of the Grant and Grantor's spouse's death, then this one hundred dollars ($100.00) shall be distributed to the Grantor's other children * * *." In the Amended and Restated trust document, the testimonial residual estate is divided between the children, including Judith, equally. In this case, however, the language of the January 17, 2002 amendments is clear and unequivocal as to Judith, and the language of the 1996 original trust in this regard is essentially irrelevant.
 B. {¶ 16} In her first assignment of error, Judith argues that the trial court erred prejudicially when it recited in its memorandum that "[a]fter careful review of various form books, there does not appear to be any forms or even case law for that matter that suggests that precise language of a particular nature is required to disinherit a lawful heir. Moreover, there is no case law on point regarding the specific phrases used in grantor's instrument."
 {¶ 17} Judith also claims favor of Evid.R. 301, which states: "In all civil actions and proceedings not otherwise provided for by statue enacted by the General Assembly or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast." Judith claims the court erred in not implementing Evid.R. 301 in analyzing the trust amendments. She claims the trusts created a "presumption against disinheritance", which was inappropriately weighed by the court. See Crane v. Doty (1853),1 Ohio St. 279.
 {¶ 18} Judith claims she rebutted Betty Jean's "presumption" of death by irrefutable proof that she is alive. According to Judith's argument, because technical words contained in instruments must be construed in the technical sense, the technical meaning of the words rendered the amendments meaningless. See, Townsend Exrs. v. Townsend (1874),25 Ohio St. 477.
 {¶ 19} This argument does not avail. The common sense of the language of the amendments is that for the purposes of determining appropriate action to be taken at the time of Betty Jean's death the named party shall be presumed to be dead and the assets pass to other beneficiaries. The plain language of the amendments not only "presumes" the prior death of Judith, but spells out the consequences of the specific presumption that "shall" take place; namely, that the assets pass to other named beneficiaries as if Judith and her lineal descendants had predeceased Betty Jean.
 {¶ 20} Accordingly, the first assignment of error is overruled.
 C. {¶ 21} In her second assignment of error, Judith argues that other language in the trusts illustrate that Betty Jean was aware of the specific language needed to disinherit beneficiaries. Article IV (E) of the Gutheil Trust and Article IV (F) of the Amended and Restated Trust states: "* * * all benefits provided for such beneficiary are revoked and such benefits shall pass to the residuary beneficiaries of this Trust (other than such beneficiary and such beneficiary's lineal descendants) * * *." Judith argues that this language, which is express, demonstrates that Betty Jean knew how to disinherit and knew the language that would achieve that purpose. According to this argument, because Betty Jean did not use such language in the amendments at issue here, the trial court erred in determining that Betty Jean's intent was to disinherit Judith.
 {¶ 22} Judith also argues that the provisions in question are only applicable upon the death of Betty Jean and that Judith and her children were preserved as beneficiaries during the life of Betty. Thus, the presumption only applies upon Betty Jean's death. We find nothing inconsistent or redundant in the conclusion that Betty Jean intended to disinherit Judith and her lineal descendants while allowing Judith to remain as a beneficiary under the lifetime benefits of the trusts.
 {¶ 23} Finally, Judith contends that there is a legitimate estate planning purpose, other than disinheritance, for the language used in the amendments. However, we find that the language of the 1996 trusts dispels the conclusion that the language used in the 2002 amendments was intended to counter the five year statutory period of the Presumed Decedents Law. R.C. 2121. The 1996 trust was clear and unequivocal in using a technique to deal with an absent beneficiary different than that imposed in the 2002 amendments.
 {¶ 24} The trial court did not err in its conclusions that the fiduciaries were entitled to summary judgment as requested. Accordingly, we overrule the second assignment of error.
 III. {¶ 25} In conclusion, upon an independent review of the documents and the undisputed facts presented, we find that reasonable minds can come to but one conclusion; namely, that Betty Jean intended to disinherit Judith and her lineal descendants at the time of Betty Jean's death. This conclusion is adverse to Judith. The appellees are entitled to summary judgment granting the requested relief. Accordingly, we affirm the judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas Court, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and Abele, J.: Concur in Judgment and Opinion.
Judge John R. Milligan, retired For the Court from the Fifth District Court of Appeals, sitting by assignment of the Supreme Court of Ohio in the Fourth District Court of Appeals.