[Cite as *Arnott v. Arnott*, 190 Ohio App.3d 493, 2010-Ohio-5392.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

In re Arnott et al.                    :

                                       :        Case No. 09CA25

                                       :

                                       :        DECISION AND
                                                JUDGMENT ENTRY
                                       :

                                       :        **Released 11/1/10**

                                       :
_____
APPEARANCES:

Judkins & Hayes, Robert J. Judkins, and John W. Judkins, for appellees Kenneth D. Arnott et al.

Shannon M. Treynor, for appellants James Wayne Arnott et al.

_____

Harsha, Judge.

{¶ 1} James Arnott, successor trustee of the Joseph Scott Arnott Revocable Trust ("Trust"), appeals from a declaratory-judgment action in the probate court involving the Trust, which gave James and his brother, Kenneth Arnott, the option to purchase specified parcels of the Trust-owned farmland "at a price equal to the appraised value of said real property as affixed for federal and/or state estate tax purposes." Kenneth and other beneficiaries disagree with James over the interpretation of this sentence. Kenneth argues that the option price is the value of the realty as determined by the appraiser, i.e., the fair market value. James contends that the option price is the appraiser's value reduced by an estate-tax deduction allowed for farmland in either the federal or state tax code.

{¶ 2} In 2007, Kenneth filed a complaint seeking declaratory relief and asking the probate court to interpret the provision in the Trust concerning the option price. The court found that the contested sentence was unambiguous and declared that the option price was the appraiser's value, i.e., the fair market value. The court reached this conclusion because the appraisal document was physically "affixed" to the estate-tax return.

{¶ 3} James initially asserts that the trial court erred in entertaining an action for declaratory relief. He claims that the complaint failed to set forth a "justiciable issue" and additionally, declaratory relief would not end the controversy between the parties. However, the interpretation of the correct option price was justiciable because, to the detriment of Kenneth and other Trust beneficiaries, James had already exercised his option according to his interpretation of the contested provision. And the declaratory-judgment action would end the controversy concerning the interpretation of the sentence, as well as confer certain legal rights and status on the Trust beneficiaries. Thus, the trial court did not abuse its discretion in exercising declaratory relief.

{¶ 4} Next, James asserts that the trial court erred in its interpretation of the contested option-price language. We agree that the sentence concerning the option price is susceptible of more than one reasonable interpretation. However, we are guided by the rule that we should review the Trust as a whole to determine the settlor's intent. Looking at the document as a whole, we conclude that the settlor intended the option price to be the value established for federal and/or state estate-tax purposes, in this case, the federal and/or Ohio qualified-use value. This result comports with the

settlor's intent to keep the farms in the family and to benefit James over other Trust beneficiaries.  Therefore, we reverse the trial court's judgment.

### I.  Summary of the Case

{¶ 5}  In 2004, Joseph Arnott created the Trust, designating his son James as successor trustee upon his death.  His other son, Kenneth Dale Arnott, was designated second successor trustee.  James, Kenneth, and a number of other individuals are beneficiaries under the Trust.

{¶ 6}  The Trust document contains two paragraphs at issue here.  The "d.3" paragraph provides Kenneth with the exclusive option to purchase one tract of farmland owned by the Trust.  Paragraph "d.4" gives James the exclusive option to purchase three tracts of farmland owned by the Trust.  The Trust did not list specific purchase prices for the tracts of realty.  Instead, the option price was described as "a price equal to the appraised value of said tract as affixed for federal and/or state estate tax purposes."[1]  Both James and Kenneth had to exercise their option to purchase the property within 90 days of the "written date of notice to [either son] of the appraised value affixed by the appraiser of the trust estate."

{¶ 7}  After Joseph's death, the Trust hired John Rittenhouse to appraise the four tracts of Trust property.  He appraised James's three tracts of farmland at a total value of $1,821,00.  And he appraised Kenneth's single tract at $210,000.  Neither party disputes that the Rittenhouse appraisals were physically attached to both Joseph's federal and state estate-tax-return schedules.

{¶ 8}  Peter Quance, attorney for the Trust, wrote a letter to the Trust beneficiaries, explaining that the Trust gave James and Kenneth the option to purchase

---

[1] In the clause granting James an option, the word "tract" is replaced by "real property."

farmland at the value listed on the federal and state estate-tax returns. Quance advised that a deduction, also known as a "qualified use valuation," was available for the farmland real estate on both the federal and state estate-tax returns. If James and Kenneth opted to use the Ohio version of the qualified-use valuation, James's option price to purchase the three tracts of farmland would be $1,375,265 and Kenneth's option price would be $155,735. As is evident, both qualified-use values were significantly less than the Rittenhouse appraisals.

**{¶ 9}** Kenneth's attorney, Larry D. Hayes, wrote Quance a letter, explaining that he disagreed with Quance's interpretation of the Trust option price. Hayes argued that the correct option price was the actual appraised value of the farmland, i.e., the Rittenhouse appraisal. James hired a new attorney, James M. Dietz, who responded with a letter defending Quance's interpretation.

**{¶ 10}** James decided to exercise his option and purchase the three tracts of property at the Ohio qualified use value, or $1,375,265. Kenneth refused to exercise his option at any reduced value and wished to pay the Rittenhouse appraisal price of $210,000. Because of the 90-day limitation and to ensure timely administration of the Trust, James created and recorded a deed memorializing a transfer of Kenneth's option property to Kenneth. The deed reflected a sale price of the Ohio qualified-use value. Proceeds from the Trust were used to pay the purchase price, pending the outcome of litigation concerning the correct interpretation of the Trust option price. The propriety of James's decision to exercise Kenneth's option and convey the property to him is not an issue here.

{¶ 11} In August 2007, Kenneth and other trust beneficiaries filed suit against James in the probate court of Highland County, seeking a declaratory judgment of the correct interpretation of the option price. After a trial, the court issued a decision finding that "a price equal to the appraised value of said tract as affixed for federal and/or state estate tax purposes" meant the appraised value of the tracts of realty, i.e., the Rittenhouse appraisal.

{¶ 12} After the court issued this decision, the case went through a number of procedural hurdles that are not relevant except to note that the case was dismissed, refiled in a different county, transferred, refiled in the same county, and then consolidated. The case ultimately ended up refiled in Highland County, where the parties stipulated to all matters decided in the original lawsuit.

{¶ 13} In April 2009, the Highland County probate court issued an entry that closely mirrored its initial decision. First, it found that the complaint satisfied the requirements for a declaratory action. Second, it addressed the contested option language and found:

> On review of the language at issue in Article III paragraphs d.3 and d.4 of the trust, specifically "a price equal to the appraised value of said tract (d.3) or appraised value of said real property (d.4) as affixed for federal and/or state estate purposes * * *." It has been since initial review of said language by this Court and remains crystal clear to this Court the option price of each of the four tracts is the Rittenhouse appraisal value. The Rittenhouse appraisal is the only "appraised value" of record in this action and the only "appraised value" affixed to the Federal and State Estate Tax returns.

{¶ 14} James filed a timely appeal from this entry.

## II. Assignments of Error

{¶ 15} James sets forth the following assignments of error:

Assignment of Error No. 1

The trial court erred in its finding that the grounds for proceeding on a declaratory judgment action were satisfied.

Assignment of Error No. 2

The court erred in its finding that the "appraised price affixed for federal and/or state [estate] tax purposes" is equivalent to "fair market value."

Assignment of Error No. 3

The finding of the trial court that no tax implications would flow from using the Rittenhouse appraisal as purchase price is unsupported by the record and against the manifest weight of the evidence.

### III. Grounds for a Declaratory-Judgment Action

{¶ 16} In his first assignment of error, James claims that the court erred in its finding that grounds for issuing a declaratory judgment were satisfied. The trial court found that a complaint for declaratory judgment must show "1) a justifiable[2] controversy exists; 2) facts to justify a declaration as to the rights of the parties would terminate the uncertainty and put an end to the controversy; and 3) the party seeking relief has a legal interest in the controversy." The trial court briefly mentioned that it found that these elements had been satisfied. It did not explain its factual or legal conclusions for having done so.

{¶ 17} A declaratory judgment is a civil action and provides a remedy in addition to other legal and equitable remedies available. *Aust v. Ohio State Dental Bd.* (2000), 136 Ohio App.3d 677, 681, 737 N.E.2d 605. A court may grant declaratory relief so long as it finds the action is within the spirit of the Declaratory Judgments Act, R.C. Chapter 2721, that a real and justiciable controversy exists between the parties, and that speedy relief is necessary to preserve rights that may otherwise be impaired or lost.

---

[2] We presume the trial court meant "justiciable."

*Schaefer v. First Natl. Bank* (1938), 134 Ohio St. 511, 18 N.E.2d 263, at paragraph three of the syllabus.  Dismissal of a complaint  seeking declaratory relief is appropriate when no real controversy or justiciable issue exists between the parties.  *State v. Brooks* (1999), 133 Ohio App.3d 521, 525, 728 N.E.2d 1119, citing *Weyandt v. Davis* (1996), 112 Ohio App.3d 717, 721, 679 N.E.2d 1191.

## A.  Standard of Review

{¶ 18} James contends that our standard of review is mixed, i.e., de novo review of the legal issues and deferential review of the facts.  Kenneth argues that the appropriate standard for reviewing declaratory judgments is abuse of discretion.

{¶ 19} In *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, the Supreme Court of Ohio reaffirmed that " '[t]he granting or denying of declaratory relief is a matter for judicial discretion, and where a court determines that a controversy is so contingent that declaratory relief does not lie, this court will not reverse unless the lower court's determination is clearly unreasonable.' " Id. at ¶12, quoting *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 303 N.E.2d 871, at syllabus.  See also *Englefield v. Corcoran*, Ross App. No. 06CA2906, 2007-Ohio-1807, at ¶11.  Accordingly, we will not reverse the trial court's decision to render declaratory relief unless the trial court abused its discretion. "Abuse of discretion" connotes more than an error of judgment; it implies that the court's action was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

## B.  A Justiciable Controversy

{¶ 20} James sets forth two principal arguments concerning the absence of a "justiciable controversy." First, James contends that the actual option price is now a moot point because the options were exercised and the respective farmlands were transferred before the complaint was filed. Kenneth argues that the controversy is ripe because the lawsuit was filed only after James had exercised the options at "a price which was beneficial to him, and detrimental to other trust beneficiaries."

{¶ 21} Second, James claims that the trust document gave him broad powers as successor trustee, including the explicit authority to convey any unexercised option property to himself in the absence of a higher claim. He explains that "a mere declaration of rights, given the broad discretion of the Trustee James W. Arnott to vend or not vend the trust assets, fails to rise to the level of controversy required for just declaratory adjudication." Kenneth argues that James's broad powers to sell trust property have no effect on the justiciability of the controversy. Kenneth contends that interpretation of the correct option price was not a discretionary matter for James and that the issue was properly before the probate court. And until the court determined that James's option price was incorrect, no secondary action, i.e., a breach-of-fiduciary-duty claim, would be ripe.

{¶ 22} "For a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties." *Stewart v. Stewart* (1999), 134 Ohio App.3d 556, 558, 731 N.E.2d 743, quoting *State v. Stambaugh* (1987), 34 Ohio St.3d 34, 38, 517 N.E.2d 526. "[I]n order for a justiciable question to exist, '[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events * * * and

the threat to his position must be actual and genuine and not merely possible or remote.'" *Mid-American,* 113 Ohio St.3d 133, at ¶ 9, quoting *League for Preservation of Civ. Rights v. Cincinnati* (1940), 64 Ohio App. 195, 197, 28 N.E.2d 660. Thus, "[i]nherent in determining whether a complaint sets forth a justiciable issue is the question of ripeness." *Thomson v. Ohio Dept. of Rehab. & Corr.,* Franklin App. No. 09AP-782, 2010-Ohio-416, at ¶10.

{¶ 23} The declaratory action here presented a justiciable issue between the parties. James and Kenneth fundamentally disagreed on the correct interpretation of the option-price language. Subsequently, James exercised both options to purchase Trust lands based on his own interpretation of the option price. At that time, a "real controversy" arose.

{¶ 24} Clearly, the issue is not moot simply because James exercised the options. If James underpaid for his farmland by using the Ohio qualified-use evaluation, then the Trust, Kenneth, and the other beneficiaries of the Trust were harmed by a reduction in the total assets available for distribution. In other words, the Trust beneficiaries faced an "actual and genuine" threat to their interest in the Trust property. Regardless of whether James properly exercised the option, the correct option price remained an active, genuine controversy between the parties.

{¶ 25} Moreover, James's broad powers as successor trustee do not make the issues here any less justiciable. James may have had discretion to convey, manage, and even purchase unexercised option property. But as Kenneth correctly argues, James does not have the power as successor trustee to interpret Trust provisions in a

manner inconsistent with the settlor's intentions.  Accordingly, the trial court did not abuse its discretion in its finding that a justiciable issue existed.

### C.  Termination of the Controversy

**{¶ 26}** Next, James argues that Kenneth, other than requesting the court to determine the option price, failed to request any additional relief that would flow from this determination.  Essentially, he contends that the trial court's determination of the option price would not put an "end to the controversy."  Kenneth would still be forced to pursue a secondary action, such as a breach-of-fiduciary-duty claim against James.  Kenneth argues that no additional prayer for relief was necessary because R.C. 2721.05, part of the Declaratory Judgment Act, allows a trial court to interpret and construe provisions in a Trust.

**{¶ 27}** The Supreme Court of Ohio long ago held that the Declaratory Judgment Act is remedial in nature and should be liberally construed, but it "does not require a court to render a futile judgment that 'would not terminate' any 'uncertainty or controversy' whatsoever."  *Walker v. Walker* (1936), 132 Ohio St. 137, 139, 5 N.E.2d 405, quoting from an earlier version of the Declaratory Judgment Act, Gen.Code 12102-6.  And under R.C. 2721.07 a court *may* refuse to render declaratory relief "if the judgment or decree would not terminate the uncertainty or controversy giving rise to the action or proceeding in which the declaratory relief is sought."

**{¶ 28}** "[I]n keeping with the long-standing tradition that a court does not render advisory opinions, [courts] allow the filing of a declaratory judgment only to decide 'an actual controversy, the resolution of which will confer certain rights or status upon the

litigants.'"  *Mid-American,* 113 Ohio St.3d 133, at ¶ 9, quoting *Corron v. Corron* (1988), 40 Ohio St.3d 75, 79, 531 N.E.2d 708.

{¶ 29} The only controversy presented here was the correct option price.  And the court's interpretation of the correct option price put an end to that controversy (contingent of course upon the outcome of this appeal and any subsequent proceedings).  However, James is correct that the court's interpretation of the option price may not fully end all controversy between the parties.  James would still have to rescind his option and reconvey the Trust property or pay the Trust an amount reflecting the correct option price for the option property.  If he failed to act, the Trust beneficiaries might seek injunctive relief or file a breach-of-fiduciary-duty action.  Thus, the trial court's declaration here would not end all possible future controversies between the parties.

{¶ 30} However, we agree with Kenneth that R.C. 2721.05 explicitly provides a right of action for a trust beneficiary seeking a declaration concerning the interpretation of a trust provision.  Furthermore, R.C. 2721.02(A) provides that "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed."  Thus, the legislature clearly intended for courts to issue declaratory judgments provided for in the Act regardless of whether secondary actions were necessary to provide parties with full relief.  See also *State ex rel. Thernes v. United Local School Bd. Dist. of. Edn.*, Columbiana App. No. 07CO45, 2008-Ohio-6922 (concluding that a declaratory action seeking interpretation of a statute was proper even when the declaratory judgment would not terminate a related but separate contractual dispute between the parties).

{¶ 31} Nonetheless, James directs our attention to the case of *Hay v. Jefferson Industries Corp.* (1992), 62 Ohio Misc.2d 472, 601 N.E.2d 672, for the proposition that a court should decline to award declaratory relief when the practical effect of the declaratory action would not fully end the dispute between the parties. In *Hay,* the plaintiff alleged that she had slipped and fallen on an icy sidewalk while leaving the worksite of her employer, Jefferson Industries Corporation. Id. at 474. She sued both Jefferson and the Ohio Bureau of Workers' Compensation. Her complaint alleged that Jefferson was liable for her injuries and that she also was entitled to participate in the Workers' Compensation fund. She additionally sought a declaration from the court as to which claim for liability she should pursue. Id.

{¶ 32} The court declined to grant the requested declaratory relief and characterized it as a request for an advisory opinion. The court noted that nothing in the Declaratory Judgment Act provided for a declaration of remedies available to a personal-injury plaintiff. Id. at 474-475. Moreover, the court noted that such a declaration, if made, would not terminate the controversy between the parties. Id. at 475. The court explained: "Plaintiff would still have the burden of proving those facts necessary to establish her right to recover from Jefferson or participate in the bureau's fund." Id.

{¶ 33} We find *Hay* distinguishable. In that case, no portion of the Declaratory Judgment Act envisioned the sort of relief sought by the plaintiff. But here, as discussed above, one provision within the Declaratory Judgment Act does just that. R.C. 2721.05 provides:

> Any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or

cestui que trust, in the administration of a trust, or of the estate of a decedent, *** may have a declaration of rights or legal relations in respect thereto in any of the following cases:

  ***

(C) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

{¶ 34} The statute explicitly provides a right of action for a trust beneficiary, i.e., "cestui que trust," to obtain declaratory relief regarding the administration of a trust, including questions about "writings" in the Trust. Moreover, in *Hay*, the declaratory action would not have granted the plaintiff any rights that she did not possess beforehand. All she wanted from the court was guidance, i.e., who do I sue? Here, the practical effect of the declaratory decision will be to grant Kenneth and other trust beneficiaries potential causes of action against James if he decides to do nothing. That is to say, the action has conferred "certain rights or status upon the litigants."

{¶ 35} Accordingly, we overrule James's first assignment of error.

IV. Interpretation of the Option-Price Language

A. Standard of Review

{¶ 36} Again, the parties dispute the standard of review. James argues that we are faced with a legal issue here, akin to the interpretation of wills, and our review is de novo. Citing *Mid-American*, Kenneth contends that our review is abuse of discretion, even when reviewing legal issues. Kenneth also cites *Hamblin v. Daugherty*, Medina App. No. 08CA0009-M, 2008-Ohio-5306, for an example of a case where the court adopted an abuse-of-discretion standard when reviewing legal determinations in a declaratory-judgment action.

**{¶ 37}** As we stated in Section I of the opinion, in *Mid-American,* the court reaffirmed its prior holding that the standard of review for dismissal of a declaratory-judgment action is abuse of discretion. The language used by the court in *Mid-American* was broad: "We therefore reaffirm that declaratory judgment actions are to be reviewed under an abuse-of-discretion standard." Id. at ¶ 14.

**{¶ 38}** Apparently relying on this language, in *Hamblin,* 2008-Ohio-5306, the Ninth District indicated that it was applying an abuse-of-discretion standard to a trial court's legal conclusions in a declaratory-judgment action. There the appellant argued that the trial court erred in granting declaratory relief on the basis of three separate legal arguments: election-of-remedies doctrine, collateral estoppel, and mootness. The court, citing *Mid-American*, announced that its standard of review of the trial court's grant of declaratory judgment was abuse of discretion. Id. at ¶ 8.

**{¶ 39}** Upon review of *Hamblin*, the court appears to have engaged in de novo review. This was noted by the concurring judge who agreed with most of the court's analysis, but disagreed with applying an abuse-of-discretion standard. Id. at ¶ 22. The concurring opinion acknowledged that *Mid-American* mandates abuse-of-discretion review of the decision to grant or deny declaratory relief. But it explained, "[o]nce a trial court determines that a request for declaratory relief should be entertained, it applies the law just as it does in any other case. It does not have discretion to determine whether to correctly apply the law." Id. at ¶ 23.

**{¶ 40}** This position comports with a decision of the Ninth District only a year prior, in *Pierson v. Wheeland*, Summit App. No. 23422, 2007-Ohio-2474. In that case, the court, also noting the recent *Mid-American* decision, held that it would apply de novo

review to a purely legal issue decided within the context of a declaratory-judgment action. Id. at ¶ 10.

{¶ 41} Likewise, we do not read *Mid-American* to mandate abuse-of-discretion review of legal issues in a declaratory-judgment action. In other words, no court has the discretion to commit an error of law. And in fact, the issue in *Mid-American* was whether the court erred in dismissing an action for declaratory judgment, i.e., whether the grounds for declaratory judgment (discussed in Section I of this opinion) were satisfied. The court did not address whether the trial court, after exercising its discretion to proceed with declaratory judgment, correctly applied the substantive law.

{¶ 42} And thus we agree with the concurring opinion in *Hamblin*. A trial court's determination of purely legal issues is never one of degree or discretion. Regardless of whether the action is styled as one for declaratory relief, the trial court must correctly apply the law. See also *State v. Thompson*, Montgomery App. No. 22984, 2010-Ohio-1680 (Fain, J., concurring). Accordingly, we review the trial court's interpretation of the option clause de novo.

### B. The Option-Price Language

{¶ 43} The language at issue in the trust is located in Article Three and reads:

d.3  I give, bequeath and devise to my son, [KENNETH] DALE ARNOTT, on the condition he survive me, the exclusive option to purchase a certain tract of land, containing 69 acres, more or less, located at 9784 Paint Creek Road, in the Township of Madison, County of Highland, State of Ohio, at a price equal to the appraised value of said tract as affixed for federal and/or state estate tax purposes. Said option shall expire ninety (90) days from the written date of notice to Dale Arnott of the appraised value affixed by the appraiser of the trust estate.

d.4  I give, bequeath and devise to JAMES WANYE ARNOTT, on the condition that he survive me, the exclusive option to purchase any part of or all of my remaining land titled to the trust, including any real estate not

purchased by Dale Arnott and to include the following, being (1) tracts containing 220 acres, more or less, located at 12951 Black Road, in the Township of Paint, County of Highland, State of Ohio, and.or [sic] (2) approximately 99 Acres, located in Perry Township, Fayette County, Ohio, and/or (3) a tract of land containing 248 Acres located in Paint Township on Ladd Road, each at a price equal to the appraised value of said real property as affixed for federal and/or state estate tax purposes. Said option shall expire ninety (90) days from the written date of notice to James Wayne Arnott of the appraised value affixed by the appraiser of the trust estate.

**{¶ 44}** When we construe the language of a revocable inter vivos trust, we apply the same rules of construction as when we interpret wills. *Henson v. Casey*, Pickaway App. No. 04CA9, 2004-Ohio-5848, at ¶ 12, citing *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 543 N.E.2d 1206, superseded by statute on other grounds. Our fundamental goal is to "ascertain and carry out, within the bounds of the law, the intent of the testator." *In re Estate of Lewis* (July 23, 1999), Athens App. No. 98CA17, 1999 WL 595458, at *2, citing *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706; *Oliver v. Bank One, Dayton, N.A.* (1991), 60 Ohio St.3d 32, 34, 573 N.E.2d 55. Therefore, when the language of the will is clear and unambiguous, the testator's intent must be ascertained from the express terms of the will itself. *Domo* at 314. Only when the express language of the will creates doubt as to its meaning may the court consider extrinsic evidence to determine the testator's intent. *Oliver* at 34. See also *In re Estate of Evans* (1956), 165 Ohio St. 27, 30, 133 N.E.2d 128. In addition, when determining the testator's intent, we consider not just the contested language but rather the "whole will, and read in light of the applicable law, and circumstances surrounding the will's execution." *Cent. Trust Co. of N. Ohio, N.A. v. Smith* (1990), 50 Ohio St.3d 133, 136, 553 N.E.2d 265.

{¶ 45} Kenneth argues that the language is unambiguous.  He contends that the option price must be the Rittenhouse value because that is the only "appraisal" that was physically attached, or "affixed," to the estate-tax return.   James argues that this interpretation fails to give any effect to the qualifying words "for federal and/or state estate tax purposes."  James argues that this last clause indicates that the option price was intended to be the value submitted to the federal and/or state taxing authority for purposes of paying any federal and/or state estate taxes owed.  And the only appraisal values submitted "for" federal and/or state purposes were the qualified-use values.

{¶ 46} At first glance, the contested sentence appears ambiguous.  The term "affixed" appears to be a main source of confusion and apparently formed the basis of the trial court's decision.

{¶ 47} When construing testamentary language, words "if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear[s] from the context that they were used by the testator in some secondary sense." *Townsend's Exrs. v. Townsend* (1874), 25 Ohio St. 477, paragraph three of the syllabus.  Black's Law Dictionary defines "affix" as "to attach, add to, or fasten on permanently."  Ballentine's Law Dictionary defines "affix" as "to attach in a degree of permanence" and "affixed" as "securely attached."   And the Merriam-Webster Dictionary defines it as "to attach physically" or "to attach in any way."  Clearly, the word connotes a degree of physical attachment.  But the dictionary definitions suggest that physical attachment is not the only possible method of "affixing" something, especially when that word is subject to a dependent clause.  As alluded to previously,  "[a]ll the

parts of the will must be construed together, and effect, if possible, given to every word contained in it." *Townsend* at paragraph four of the syllabus.

{¶ 48} The trial court interpreted "affixed" in the most physical sense and in isolation from the remaining language in the sentence and the rest of the document. The Rittenhouse appraisal was the only "appraisal" that was physically attached (or perhaps more accurately, "appended") to the estate-tax returns.   But as James indicates, this interpretation ignores the qualifying phrase "for federal and/or state estate tax purposes."   When we give effect to that qualifying phrase, the most logical interpretation is that the appraised value affixed "for federal and/or state estate tax purposes" is the value that was used on the tax-return schedule, i.e., the qualified value, which was physically written (in a sense, affixed) and submitted to the taxing authority for determination of the estate tax.   The Ohio qualified-use value was the only "appraised value" that was used *for* estate-tax purposes.   The Rittenhouse appraisals were the basis for those values.   But they were not the actual appraised value submitted for determination of the federal and/or state estate tax.

{¶ 49} Arguably, the contested sentence, when viewed alone, is ambiguous.   But interpretation of testamentary or trust documents, like the interpretation of legislation, is a holistic endeavor.   And there is another sentence in both options that significantly clarifies the meaning of the word "affixed."

{¶ 50} Both paragraphs conclude with the phrase "[s]aid option shall expire ninety (90) days from the written date of notice to [Kenneth or James] of the appraised value affixed by the appraiser of the trust estate." This sentence clearly demonstrates that "affixed" is being used in some secondary sense.   If one replaces the word "affixed"

with the phrase "physically attached," the sentence becomes nonsensical: "[s]aid option shall expire ninety (90) days from the written date of notice *** of the appraised value *physically attached* by the appraiser of the trust estate." (Emphasis added.) Physically attached to what? But if one interprets the word "affixed" to mean "set," "determined," or "established," the sentence is logical: "[s]aid option shall expire ninety (90) days from the written date of notice *** of the appraised value *set* by the appraiser of the trust estate." Moreover, it is logical that the settlor would have used unqualified language, i.e., "of the appraised value affixed by the appraiser of the estate," in the sentence fixing the option price if his intent were to adopt the fair market value of the land. In other words, there would be no need to add language referring to estate-tax values if it were not meant to qualify the language that preceded it.

{¶ 51} Finally, when we look at the document as a whole to determine the settlor's intent, it is clear that he intended to favor James in the distribution of the trust's assets. James was to receive 40 percent of the distribution of the Trust property after all options were exercised. The other beneficiaries received only a 10 or 15 percent share. Likewise, James received the option to purchase three tracts of land totaling 567 acres, while Kenneth received an option to purchase 69 acres. The other beneficiaries received no options. And the fact that the settlor granted James and Kenneth the option to purchase land is a strong indicator that he wished the land to remain in the family with his sons. Using the qualified-use value rather than the fair market value is more likely to accomplish that result because the purchase prices were substantially lower. In light of the settlor's clear intent to keep the farms in the family and to favor James in the

distribution of Trust assets, it is only logical that he would use an option value that promoted that intent, i.e., the value set for estate-tax purposes.

{¶ 52} The appraised value established for state estate-tax purposes was the Ohio qualified-use value. Therefore James's interpretation of the Trust provision was correct. Accordingly, we hold that "at a price equal to the appraised value of said real property as *affixed* for federal and/or estate tax purposes" means that the option price was the appraised value, reduced by any proper deductions, submitted to the taxing authority (either federal or Ohio).

V. Manifest Weight of the Evidence

{¶ 53} James's third assignment of error is moot per our resolution of his second assignment of error.

VI. Conclusion

{¶ 54} For the foregoing reasons, we overrule James's first assignment of error. However, we sustain his second assignment of error and reverse the declaratory judgment of the trial court. James's third assignment of error is moot based upon our disposition of his second assignment of error.

Judgment reversed<br>and cause remanded.

McFARLAND, P.J., and ABELE, J., concur.