[Cite as *Weathington v. Hill*, 2011-Ohio-5875.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

SHIRLEY WEATHINGTON, ET AL.,

    PLAINTIFFS-APPELLEES,           CASE NO. 9-11-16

    v.

RALPH HILL, JR.,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 10 CIV 52422

Judgment Reversed and Cause Remanded

Date of Decision:   November 14, 2011

APPEARANCES:

    *J. C. Ratliff and Jeff Ratliff* for Appellant

    *Laura C. Blumenstiel and James B. Blumenstiel* for Appellees

Case No. 9-11-16

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Ralph E. Hill, Jr. ("Ralph"), appeals the judgment of the Marion County Court of Common Pleas, Probate Division, finding in favor of his six brothers and sisters, Plaintiffs-Appellees[1] ("the Siblings" or "Appellees"), in their declaratory judgment action to determine the parties' interests in the real property that was owned by their mother prior to her death in 1966. On appeal, Ralph contends that the trial court erred in finding that his affirmative defenses of statute of limitations, adverse possession and laches were without merit, and that the probate court erred in denying his motion to dismiss based upon lack of subject-matter jurisdiction. For the reasons set forth below, the judgment is reversed.

{¶2} On July 29, 2010, the Siblings filed a complaint (Case No. 10 CIV 52422) requesting the probate court to make a declaratory judgment regarding the parties' respective ownership interests in real estate located at 608 Jefferson Street, Marion, Ohio (hereinafter, "the Property"), that was previously owned by the parties' deceased parents, Ralph E. Hill, Sr. ("Father") and Ida Loree Hill ("Mother"). The primary issue to be decided concerned what interests, if any, the

---

[1] The Plaintiffs-Appellees are: Shirley Weathington, Juanita Hill, George Hill, Earl Hill, Marilyn Sutton, and Deborah Carter. All six Siblings lived outside of the state of Ohio when the complaint was filed, and represent that they have lived out-of-state for many years.

-2-

Siblings own in the Property, also known as Lot 6451 ("Lot 1") and Lot 6452 ("Lot 2"), that may have passed to them from their Mother upon her death in 1966.

{¶3} On December 4, 1966, the parties' Mother died intestate, survived by her husband and the seven children. At that time, the Mother and the Father each owned a one-half interest in the Property, as tenants in common. Since the Mother died intestate, her one-half ownership interest in each lot was subject to the statute of descent and distribution in effect in at that time. Therefore, R.C. 2105.06(C)[2] specified how her surviving spouse and children should share in the distribution of her one-half interest in the Property.

{¶4} According to the statute that was in effect in 1966, the Father was entitled to a one-third interest of the Mother's half interest (resulting in a 2/3 interest in the total Property), and the seven children were entitled to inherit a two-thirds interest of the Mother's half interest (resulting in a 1/3 interest in the total Property). Therefore, each of the seven children was entitled to inherit a 1/21[st] interest (1/3 interest divided by 7) in the Property. No estate was opened at the time of the Mother's death and the Father continued to live on the Property. The children, except for Ralph, eventually moved out of state.

---

[2] R.C. 2105.06, the statute of descent and distribution that was in effect in 1966 stated, in pertinent part: "When a person dies intestate having title or right to any personal property or to any real estate or inheritance in this state, such personal property shall be distributed and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course: * * * (C) If there is a spouse and more than one child or their lineal descendants surviving, one third to the spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes; * * *."

{¶5} In 1984 or 1985, the Father became ill and was hospitalized for more than a month. In an affidavit, Ralph stated that he made and helped pay for improvements to the property so that his Father could return to the home after his hospitalization. Ralph further stated that he and his wife assumed full, round-the-clock care for his Father from the time of his release from the hospital until his Father's death in 1989.

{¶6} On November 24, 1987, the Father signed a General Warranty Deed transferring his ownership interest in the Property to Ralph, although the General Warranty Deed was not recorded at that time. In January of 1988, Ralph opened an estate for his Mother in the Probate Court of Marion County (Case No. 40592). At that time, four of the Siblings (Deborah, Earl, Shirley and Marilyn) signed waivers agreeing to have Ralph administer the estate of their Mother. On January 11, 1988, the probate court issued a Certificate of Transfer transferring the Mother's half interest in Lot 1 to the Father, as her surviving spouse. The estate was released from administration, pursuant to R.C. 2113.03, which exempts estates of small monetary value from administration.

{¶7} On January 12, 1988, the Father and Ralph entered into a Land Installment Contract for the purchase of Lot 1 and Lot 2, and the contract was recorded. On March 2, 1988, a release of the Land Installment Contract was

executed and recorded. Also on that date, the previously executed General Warranty Deed was recorded, transferring ownership of Lots 1 and 2 to Ralph.

{¶8} On December 16, 1989, the Father died. There is nothing in the record pertaining to the administration of the Father's estate. Ralph claims he has resided on the Property from at least March 2, 1988, through the current court proceedings. In his affidavit, Ralph represents that at the time of their Father's death in 1989, all family members agreed Ralph was the owner of the Property with full, 100% ownership interests. (Affid. of Ralph Hill, Jr., Feb. 11, 2011.)

{¶9} On May 1, 1996, Ralph filed an Affidavit for Transfer concerning the transfer his Mother's interest in Lot 2 because the original Certificate of Transfer issued in January of 1988 only pertained to Lot 1. Ralph did not re-open his Mother's estate when he filed the Affidavit for Transfer. The Affidavit set forth the Mother's interest in the lot; attested to the Father's transfer of his interest to Ralph by General Warranty Deed on March 2, 1988; and stated that at the time that the Father conveyed the Property to Ralph, the Father "was seized in fee simple to title" to both of the Lots. (Ex. C to Plaintiff's Complaint for Declaratory Judgment.)

{¶10} In 2009, the Siblings contacted an attorney to investigate their potential ownership interests in the Property. On July 17, 2009, the Siblings filed an "Affidavit Relating to Title" per R.C. 5301.252, making several assertions

concerning the "actual ownership" of the Property. The affidavit stated that the Siblings were all entitled to an interest in the Property upon their Mother's death, pursuant to R.C. 2105.06(C); that a fractional interest should have automatically vested in each child at the time of the Mother's death; that the 1988 Certificate of Transfer and the 1996 Affidavit of Transfer were defective and could not have been used to convey an ownership interest that would have overridden each of the Siblings' statutory ownership interests; that there was no recorded document that ever attempted to convey the Mother's interest in Lot 2 to the Father; that the 1988 release from administration proceedings were jurisdictionally suspect because the cap for such a proceeding in 1966 was only $2,000; and, that there were other irregularities in the proceedings, such as no appraisal and improper waiver forms. The affidavit further stated that it was filed to recognize the 1/21st fractional interest of each of the Siblings in the Property. (Affidavit re Permanent parcel No. 12-119000.0500; File No. 2009-00004331, Book: 1099, Page: 500.)

{¶11} On July 29, 2010, the Siblings filed a Complaint for Declaratory Judgment against Ralph in the probate court seeking judgment in their favor on the matters set forth in their Affidavit Relating to Title. They contend that the Father could not have transferred a greater interest than he possessed to Ralph, and that the Father's only interest in the Property was his original half-interest and the one-third interest that he inherited upon his wife's death. Therefore, they maintain that

the transfers of the portion of the Property that should have passed to the Siblings upon the Mother's death were null and void. They asked the probate court to declare that they each had a 1/21st interest in the Property.

{¶12} Ralph filed an Answer generally denying the allegations in the Complaint. Ralph further asserted several affirmative defenses, including failure to state a claim upon which relief could be granted, and the doctrines of unclean hands, estoppel, waiver, and laches. Ralph also claimed that the Siblings had failed to mitigate or minimize their damages and that their claims, if any, were barred by the applicable statute of limitation.

{¶13} The probate court advised counsel for the parties that it would decide the matter based upon written arguments to be submitted according to a briefing schedule established at a pre-trial conference in December of 2010. Accordingly, Ralph submitted a Motion to Dismiss Plaintiff's Complaint, pursuant to Civ.R. 12(B)(6). Ralph asserted several reasons, including that: the declaratory judgment action was time-barred because the actual underlying purpose of the action was to assert a claim to quiet title, which is subject to a twenty-one year statute of limitations; Ralph's father obtained rights to the entire property through adverse possession, therefore entitling him to give Ralph his interests in the entire property; Ralph himself could claim the property via adverse possession; and, the

doctrines of laches and waiver precluded any further action. Ralph also asserted that the matter should be dismissed because the probate court lacked jurisdiction.

{¶14} The Siblings submitted a Memorandum Contra to the Motion to Dismiss, and Ralph submitted a Reply to this. The probate court considered the contested issues and arguments made by the parties and found that: the Mother's interests in the Property would pass according to the version of R.C. 2105.06(C) that was in effect at the time of her death; the real estate ownership interests vested upon the date of death; each child's 1/21st fractional share was never properly transferred through the appropriate probate administration, but this did not negate their respective interests; and, the matters set forth in the Siblings' Affidavit Relating to Title were well-taken and were adopted and made a part of the court's order. The probate court directed the Siblings to file the necessary probate pleadings to effect the transfer of the various ownership interests to the surviving children.

{¶15} The probate court also held:

**This Court finds it lacks jurisdiction to consider the respective financial interests of each party in the subject real estate and directs resolution of these issues pursuant to [R.C.] 5303.01, through an Action to Quiet Title in the Marion County Common Pleas Court, General Division.**

**This Court further finds that [Ralph's] arguments regarding lapse of any Statute of Limitations, Adverse Possession and Doctrine of Laches are without merit in this Declaratory**

-8-

> **Judgment Proceeding, and [Ralph] is free to assert same in the Action to Quiet Title proceeding.**

(Apr. 8, 2011 J.E., p. 3.) Accordingly, the trial court found Ralph's Motion to Dismiss was "over-ruled in part, as to the declaratory relief requested, and sustained in part, as to the parties' equitable interests in the real estate in question." (Id.)

{¶16} It is from this judgment that Ralph now appeals, raising the following two assignments of error for our review.

### First Assignment of Error

**The trial court erred in ruling that [Ralph's] arguments of statute of limitations, adverse possession and laches were without merit in an action for declaratory judgment.**

### Second Assignment of Error

**The trial court erred by failing to dismiss [the Siblings'] Complaint for Declaratory Judgment as the declaratory judgment action was incidental to an action for recovery of real estate or a quiet title action, both actions which the trial court lacked subject-matter jurisdiction.**

{¶17} We will review the second assignment of error first, as it is dispositive of this appeal. A motion to dismiss for lack of subject matter jurisdiction raises a question of law, subject to the de novo standard of review. *GrozaVance v. Vance*, 162 Ohio App.3d 510, 2005–Ohio–3815, 834 N.E.2d 15, ¶13.

**{¶18}** On appeal, Ralph maintains that the probate court lacked jurisdiction to settle the controversy because the declaratory judgment action was merely incidental to an action for recovery of real estate or a quiet title action, which is not normally within a probate court's jurisdiction. Ralph contends that the Siblings filed the declaratory judgment action in order to circumvent the twenty-one year statute of limitations on an action to recover title to property pursuant to R.C. 2305.04. Ralph also asserts that the probate court should have refused to grant a declaratory judgment when such a judgment would not fulfill the purposes of the Declaratory Judgment Act.

**{¶19}** Probate courts are courts of limited jurisdiction and probate proceedings are restricted to those actions permitted by statute and by the Ohio Constitution. *Corron v. Corron* (1988), 40 Ohio St.3d 75, 531 N.E.2d 708, paragraph one of the syllabus. The jurisdiction of a probate court is defined by R.C. 2101.24:

> **(A)(1) Except as otherwise provided by law, the probate court has exclusive jurisdiction:**
>
> **\* \* \***
>
> **(b) To grant and revoke letters testamentary and of administration;**
>
> **(c) To direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates;**

* * *

**(l)    To render declaratory judgments, including, but not limited to, those rendered pursuant to section 2107.084[3] of the Revised Code;**

* * *

R.C. 2101.24(A).    A probate court may have concurrent jurisdiction when another section of the Revised Code expressly confers jurisdiction upon the probate court and does not confer jurisdiction upon another court or agency. R.C. 2101.24(A)(2).  In addition, a probate court has concurrent jurisdiction with the general division of the court of common pleas when jurisdiction is stated to be concurrent in the Revised Code or by judicial decision; when the matter involves an inter vivos trust or certain specified trusts; and, in a few other specified instances.  R.C. 2101.24(B).

{¶20} The Declaratory Judgment Act is codified in R.C. 2721 et. seq.  The section pertaining to probate courts, R.C. 2727.05, states that "[a]ny person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or the estate of a decedent * * *, may have a declaration of rights or legal relations in respect to the following cases:

---

[3] R.C. 2107.084 pertains to determining the validity of a will; sealing and filing a will; and the procedure for revoking or modifying a will.

**(A)** **To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;**

**(B)** **To direct the executors, administrators, trustees, or other fiduciaries to do or abstain from doing any particular act in their fiduciary capacity;**

**(C)** **To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.**

R.C. 2721.05. Thus, taken together these sections give the probate court exclusive jurisdiction over declaratory actions brought "to determine any question *arising in* the administration of the estate." (Emphasis added.) Id.

{¶21} The Siblings argue that these two statutes give a probate court the jurisdiction to hear declaratory judgment actions brought "to determine any questions *arising out of* the administration of an estate." (Appellees Brief, p. 3, emphasis added.) They also claim that "countless courts" have ruled that jurisdiction is properly with the probate court "on matters concerning the same issues present in this case," and provide numerous citations. (Id. at p. 4.)

{¶22} However, we find that the Siblings' reasoning is incorrect on both grounds. First, the Siblings have misquoted and misinterpreted the statute, thereby changing its meaning. Second, the facts and circumstances in all of the cases cited by the Siblings are distinguishable and inapplicable to this case.

{¶23} In examining questions concerning when probate courts have jurisdiction to render declaratory judgments, the Supreme Court of Ohio has held that "the only time when the Probate Court does have the power to declare rights and status and the legal relations of the parties interested as heirs, executors, etc. in an estate is after the administration of the estate has been commenced *and while it is still pending*." (Emphasis added.) *Radaszewski v. Keating* (1943), 141 Ohio St.489, 499, 49 N.E.2d 167, 172.[4] In dicta, the Supreme Court further commented that "[c]ertainly the Probate Court would not have jurisdiction to determine the matters at issue after the administration had been fully settled and the estate closed." Id.

{¶24} The questions involved in this declaratory judgment action did not arise "in the administration" of any estate. The Mother died forty-four years earlier, and her estate was opened and then released from administration in 1988, twenty-two years before the Siblings filed their cause of action. The Siblings did not object to any of the claimed irregularities in the administration at that time and they did not file a timely appeal. The parties have not reopened the estate, so the questions posed in this cause of action did not arise in the administration of any

---

[4] In *Radaszewski*, the Ohio Supreme Court was interpreting Section 12104-4 of the General Code, which "specifically confers the right to have any question determined which arises in the administration of an estate." There is not any material difference between the relevant portions of Section 12104-4 of the General Code, effective at that time, and R.C. 2721.05, as it is written today.

-13-

current estate pending before the probate court. Therefore, the probate court did not have any statutory authority to render a declaratory judgment.

**{¶25}** The cases cited by the Siblings in support of jurisdiction all involved declaratory actions to determine the validity of inter vivos property transfers that the probate court determined *during the administration of an estate*. See, e.g., *State ex rel. Lipinski v. Cuyahoga Cty. Court of Common Pleas, Probate Div.*, 74 Ohio St.3d 19, 22, 1995-Ohio-96, 655 N.E.2d 1303, 1306 (the allegations in the complaint for declaratory judgment concerning the propriety of inter vivos transfers were filed by the plaintiff, in her capacities as executor and administrator of the decedents' estates); *Grimes v. Grimes*, 173 Ohio App.3d 537, 2007-Ohio-5653, 879 N.E.2d 247 (the brother, as executor, brought claims during the administration of the estate challenging the father's inter vivos transfer of property just prior to his death); *Bobko v. Sagen* (1989), 61 Ohio App.3d 397, 406-07, 572 N.E.2d 823 (a party responsible for the administration of an estate may bring a declaratory judgment action in the probate court to determine the validity of inter vivos transfers of property that would revert back to the estate if the transfers were to be found invalid). In all of the cases cited by the Siblings, it was necessary for the probate court to ascertain what assets were actually in the estate *before* making a final distribution. The determinations were necessary so that the probate court could properly administer and settle the estate. None of these cases involved the

interpretation and application of a statute of descent and distribution long after the decedent's death nor did they involve a closed estate.

{¶26} The facts in the case before us did not involve any inter vivos transfer made by the Mother prior to her death. Furthermore, there was no "estate" for the property to revert back to, because the estate had been released from administration decades earlier. The cases cited by the Siblings are completely distinguishable and are not relevant.

{¶27} The Declaratory Judgment Act does not enlarge the jurisdiction of courts over subject matter. *Ryan v. Tracy* (1983), 6 Ohio St.3d 363, 364, 453 N.E.2d 661. Instead, it extends the power of courts to grant the additional remedy of declaratory relief within their respective jurisdictions. Id. A court may grant declaratory relief if it finds that the action is within the spirit of the Declaratory Judgments Act (R.C. Chapter 2721); that a real and justiciable controversy exists between the parties; and that speedy relief is necessary to preserve rights that may otherwise be impaired or lost. *Schaefer v. First Natl. Bank* (1938), 134 Ohio St. 511, 18 N.E.2d 263, paragraph three of the syllabus; *In re Arnott*, 190 Ohio App.3d 493, 500, 2010-Ohio-5392, 942 N.E.2d 1124, 1129, ¶17. The Supreme Court of Ohio long ago held that the Declaratory Judgment Act is remedial in nature and should be liberally construed, but it does not require a court to render a futile judgment that would not terminate any uncertainty or controversy

-15-

whatsoever. *Walker v. Walker* (1936), 132 Ohio St. 137, 139, 5 N.E.2d 405; *Arnott*, at ¶27. Under R.C. 2721.07, a court may refuse to render declaratory relief "if the judgment or decree would not terminate the uncertainty or controversy giving rise to the action or proceeding in which the declaratory relief is sought." R.C. 2721.07.

{¶28} The only matters that were actually decided by the probate court were not the questions that were the crux of the controversy between the parties. There was no actual controversy among the parties as to what statute applied to their Mother's estate or as to what the parties were originally entitled to receive under the law. The issues that required resolution involved the *current status* of the title to the Property and how title to the Property may have been affected by the affirmative defenses raised by Ralph. And, after waiting more than four decades to raise these issues, the Siblings cannot claim that this is a matter that requires "speedy relief." And finally, the decision clearly did not terminate the uncertainty or controversy as the key issues still remain to be decided by the general division of the court of common pleas.

{¶29} In determining whether a declaratory judgment action is properly before the probate court, the primary question is whether the matter is related to the administration of the estate. *Zuendel v. Zuendel* (1992), 63 Ohio St.3d 733, 736, 590 N.E.2d 1260; *Radaszewski*, 141 Ohio St.489, 49 N.E.2d 167. The issues

in this case did not relate to the ongoing administration of an estate and were not a matter properly before the probate court. Accordingly, we find that the probate court erred when it denied Ralph's motion to dismiss for lack of jurisdiction. Ralph's second assignment of error is well-taken and is affirmed. As a result, the remaining assignment of error is moot.

{¶30} Having found error prejudicial to the Appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, P.J. and SHAW, J., concur.**

**/jlr**