[Cite as *Pointe At Gateway Condominium Owner's Assn., Inc. v. Schmelzer*, 2013-Ohio-3615.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 98761 and 99130**

# POINTE AT GATEWAY CONDOMINIUM OWNER'S ASSOCIATION, INC.

PLAINTIFF-APPELLANT

vs.

# JEROME H. SCHMELZER, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-780002

**BEFORE:** Jones, P.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 22, 2013

**ATTORNEYS FOR APPELLANT**

Steven M. Ott
Nicole D. Leclair
Ott & Associates Co., L.P.A.
55 Public Square
Suite 1400
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

Edgar H. Boles
Moriarty & Jaros, P.L.L.
30000 Chagrin Blvd.
Suite 200
Pepper Pike, Ohio 44124

Lee A. Chilcote
The Chilcote Law Firm, L.L.P.
12434 Cedar Road
Suite 3
Cleveland Heights, Ohio 44106

LARRY A. JONES, SR., P.J.:

{¶1} In two appeals, plaintiff-appellant, Pointe at Gateway Condominium Owners' Association, Inc. ("Association"), appeals the trial court's judgments granting the motion to dismiss and the motion for a permanent injunction of defendants-appellees, Jerome Schmelzer, Lawrence Schmelzer, Pointe at Gateway Condominium, L.L.C., and Pointe at Gateway, L.L.C. (collectively "appellees"). The appeals have been consolidated for our review. We affirm.

## I.   Procedural History and Facts

{¶2}  According to the Association's complaint, the Association was organized under R.C. Chapter 5311 for the purpose of administering the property known as Pointe at Gateway Condominium in Cleveland. The property, which is a historic building, consists of condominium units and appurtenant common elements.

{¶3} Appellee Pointe at Gateway Condominium, L.L.C. was the developer of the property, and appellees Jerome and Lawrence Schmelzer were board of trustee members of Pointe at Gateway Condominium, L.L.C., and Jerome Schmelzer was its chief executive officer. The complaint alleged that Pointe at Gateway, L.L.C. was the original owner of the property, and the Schmelzers were members of its board of trustees.

{¶4} According to the complaint, the Schmelzers "used their complete control over the financial affairs and business decisions" of Pointe at Gateway Condominium, L.L.C., and Pointe at Gateway, L.L.C. to commit the alleged acts. The complaint alleged that in

March 2004, Pointe at Gateway subdivided the property so as to separate ownership of the facade of the building from ownership of the rest of the building. Approximately two weeks later, Pointe at Gateway transferred the "facade parcel" to Pointe at Gateway Condominium.

{¶5} In May 2004, Pointe at Gateway Condominium created the Association and dedicated the remainder of the property to it, but retained ownership of the facade property. According to the Association's complaint, the appellees orchestrated the lot split so that they could continue leasing the facade for commercial advertising. The Association alleged that the subdivision was improper and unlawful.

{¶6} The property was turned over to the member owners of the Association in December 2011. The complaint alleged that from May 2004 until December 2011, the Schmelzers "held a controlling interest in the Association Board of Trustees and ran the day-to-day Association operations, Association management, and handled all Association bookkeeping * * *."

{¶7} In April 2012, the Association filed a complaint against appellees, seeking relief based on the following 12 counts: Count 1, a declaratory judgment stating that the lot split was invalid; Count 2, alternatively, a declaratory judgment stating that the facade parcel was common property of the Association as of May 19, 2009;[1] Count 3, compensatory damages based on the revenues appellees received from the facade parcel,

---

[1]Under Article II, Section 4 of the Bylaws, the period of developer control was to end within 30 days of 5 years following the establishment of the Association, or the sale by the developer of 75% ownership in the common elements of the Association.

but which belong to the Association; Count 4, failure to perform in a workmanlike manner; Count 5, violations of the Consumer Sales Practices Act; Count 6, breach of fiduciary duty; Count 7, negligence; Count 8, fraudulent concealment; Count 9, breach of contract; Count 10, unjust enrichment; Count 11, conversion; and Count 12, trespass to chattels.

{¶8} Appellees filed a motion for a temporary restraining order and preliminary injunction. In the motion, appellees requested the trial court order the Association to (1) stop depleting the condominium's reserve fund with expenditures on attorney fees, accountants' fees and other costs and fees incurred in litigating this action, (2) provide the unit owners with an accounting of the costs and expenditures already incurred in litigating this case and an estimate of future costs and expenditures for continuing the litigation, and (3) assess the specific unit owners who supported the litigation for the costs already incurred and future costs.

{¶9} The motion was based on the following facts contained in the record. In July 2010, the Board of Managers of the Association unanimously approved a "Reserve Study" that examined the needs for the reserve fund. The Study indicated that $208,900 was needed; funding began in 2010. By January 2012, $109,308 was accumulated in the fund.

{¶10} On January 12, 2012, the Association began commingling the reserve funds with the Association's general operating funds account. The commingling continued until March 2012, when a new reserve fund was created. At that time, the fund contained

$75,000. During the time that reserve funds were commingled with operating account funds, the Association used the commingled funds to pay for accounting and legal services arising from this litigation.

{¶11} Appellees also filed a Civ.R. 12(B)(6) motion to dismiss the Association's complaint. In their motion, appellees contended that Counts 1, 2, and 3, for declaratory judgment and compensatory damages, were "fictitious claims, unsupported by law * * *." In addition to other reasons, which will be discussed more within, appellees contended that all of the Association's counts were time-barred.

{¶12} The trial court granted appellees' motion for a temporary restraining order and preliminary injunction in part and denied it in part. The motion was granted to the extent that the Association was enjoined from depleting the reserve funds with expenditures on attorney fees, accounting fees, and other costs and fees associated with this litigation, but was denied as to appellees' request for an accounting and restoration of funds.

{¶13} Appellee Pointe at Gateway Condominium filed a counterclaim and complaint for permanent injunction. Through these pleadings, Pointe at Gateway Condominium sought to permanently enjoin the Association from the further use of the reserve funds and to restore $34,308.59 to the reserve fund.

{¶14} In September 2012, a hearing was held on Pointe at Gateway Condominium's counterclaim for a permanent injunction; the court granted judgment in favor of Pointe at Gateway Condominium on the counterclaim. The court also granted

appellees' motion to dismiss the Association's complaint.

**{¶15}** The Association now raises the following eight assignments of error for our review:

[I.] The trial court erred in finding that there was no justiciable issue with regard to the subdivision of the facade of a condominium from the rest of the building.

[II.] The trial court erred when it held that Appellant's claims for Failure to Perform in a Workmanlike Manner, Negligence, Fraudulent Concealment, Unjust Enrichment, Conversion, and Trespass to Chattels were barred by the statute of limitations because it failed to consider the actions of the Appellees between May of 2004 and December of 2011 as alleged in the Association's Complaint.

[III.] The trial court erred when it dismissed Appellant's claim for Breach of Fiduciary Duty by failing to consider the allegations asserted against the individual Defendants, J. Schmelzer and L. Schmelzer.

[IV.] The trial court erred when it dismissed Appellant's claim for Fraudulent Concealment by implementing the wrong standard.

[V.] The trial court erred when it dismissed Appellant's claim for Breach of Contract because it failed to consider all allegations in Plaintiff's Complaint as true.

[VI.] The trial court erred when it dismissed Plaintiff's claim for Unjust Enrichment because it failed to consider whether the Defendant[s]-Appellees were legally entitled to separate the facade of the building from the rest of the condominium property.

[VII.] The trial court erred when it dismissed Plaintiff-Appellant's claims for Conversion and Trespass to Chattels without considering all facts as alleged in the Complaint as true.

[VIII.] The trial court erred as a matter of law in determining that Plaintiff-Appellant is prohibited from using reserve funds for non-capital expenses.

## II. Law and Analysis

{¶16} With the exception of the last assignment of error, all the assignments relate to the trial court's judgment granting appellees' motion to dismiss pursuant to Civ.R. 12(B)(6).

{¶17} In Counts 1 and 2 of its complaint, the Association sought declaratory judgments. In Count 1, the Association sought a declaration invalidating the lot split that created the facade parcel and a designation of the area as Association common property. In Count 2, the Association sought, alternatively, a declaration of the facade parcel as Association common property as of May 2009.

{¶18} The trial court held that the allegations contained in Counts 1 and 2 failed to demonstrate the existence of a controversy or justiciable issues between the parties. In so finding, the court relied on the Declaration, which it found specifically excluded the facade parcel from the definitions of both condominium property and Association common elements. The court therefore found that the "contractual language is clear and unambiguous, and [the Association] has provided [the] Court with no legal basis to derogate from it."

{¶19} In its first assignment of error, the Association contends that the trial court erred by relying solely on the Declaration language and not considering whether, legally, ownership of the facade of a condominium building can be separated from the remainder of the building. According to the Association, under R.C. 5311.01, it can not. Thus, in other words, according to the Association, the Declaration binds the parties to an illegal

act.

{¶20} R.C. 5311.01 contains the definitions for R.C. Chapter 5311, governing condominium property. Under subsection (F)(2)(a), common elements includes "[f]oundations, columns, girders, beams, supports, supporting walls, roofs, halls, corridors, lobbies, stairs, stairways, fire escapes, entrances, and exits of buildings." The Association contends that the facade parcel is "primarily comprised of foundations and supports" and, therefore, must necessarily be part of the common elements. But the Association ignores the beginning language of the subsection of the statute, which states that common elements are defined by the statute "unless otherwise provided in the declaration." *Id.*

{¶21} The Declaration here specifically provides that "[t]he facades of and the space above the Building shall be expressly excluded from the Condominium Property, including the Common Area and Facilities." Article I, Section (E)(3) of Declaration. Further, the Declaration describes the common areas and facilities as the

> entire balance of Condominium Property described in Exhibit 1 and the improvements, structure and fixtures therein and thereon, including but not limited to, those portions of the Building, foundations, roof, main and supporting walls, columns, girders, beams, halls, corridors, stairways not within units, storage spaces, the entrance improvement, including signage, community facilities, if any, pumps, balconies, decks, patios, wires, conduits, utility lines and ducts now or hereafter situated on the Condominium Property, all as hereinbefore more specifically described as "Common Areas and Facilities" in Article I hereof, are hereby declared and established as the Common Areas and Facilities, including all electric fixtures, utility pipes and lines, faucets, shower heads, plugs, connections, or fixtures as defined by the laws of the State of Ohio and all replacements thereof shall be a part of the Common Areas and Facilities, *but specifically excluding the exterior facades of and air space above the Building * * *.*

(Emphasis added.)   *Id.* at Article II, Section (B)(1).

{¶22} The Declaration also defines condominium property as

the condominium parcels, those portions of the Building, including the improvements, structures and fixtures, on, in or under the Condominium Parcels, *specifically excluding the facades of and space above the Building*, all easements, rights and appurtenances belonging to the Condominium Parcels, and all articles of personal property submitted to the provisions of the Act.

(Emphasis added.)   *Id.* at Article I, Section (O).

{¶23} The Association contends that we review de novo the dismissal of its requests in Counts 1 and 2 for declaratory judgment.  Appellees, on the other hand, contend that, because the trial court dismissed due to a finding of a lack of justiciable issue, we review for an abuse of discretion.

The Standard of Review and the Concept of Justiciability

{¶24} In *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, the Ohio Supreme Court addressed the issue of the standard of review governing dismissals of declaratory judgment actions for lack of a justiciable issue.   The court held that the "abuse-of-discretion standard applies to the review of a trial court's holding regarding justiciability; once a trial court determines that a matter is appropriate for declaratory judgment, its holding regarding questions of law are reviewed on a de novo basis."   *Id.* at ¶ 13.

{¶25} A review of the concept of justiciability will be helpful for our purposes here.   The subject-matter jurisdiction of common pleas courts is limited by the Ohio

Constitution, Article IV, Section 4(B) to "justiciable matters." The Ohio Supreme Court has interpreted a justiciable matter to mean an actual controversy between the parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 536, 542, 660 N.E.2d 458 (1996). The justiciability requirement includes an action for a declaratory judgment. *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

{¶26} "A 'controversy' exists for purposes of a declaratory judgment when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (Internal citations omitted.) *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13, 574 N.E.2d 533 (8th Dist.1988), citing *Burger Brewing Co. v. Liquor Control Comm.*, 34 Ohio St.2d 93, 296 N.E.2d 261 (1973); *see also Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10 (an actual controversy is "more than a disagreement; the parties must have adverse legal interests").

{¶27} Ohio's Declaratory Judgment Act is a statutory scheme created in derogation of the common law, and the existence of jurisdiction in a declaratory-judgment action must be evident from the allegations in the complaint. *Van Stone v. Van Stone*, 95 Ohio App. 406, 411, 120 N.E.2d 154 (6th Dist.1952). If the complaint fails to show the existence of a real, present dispute, then any opinion by a court would be merely advisory; it is a well-established principle of law that a court cannot issue an advisory opinion. *Scott v. Houk*, 127 Ohio St.3d 317, 2010-Ohio-5805, 939 N.E.2d 835, ¶ 22.

**{¶28}** By way of example of what constitutes a justiciable matter, we consider two cases: *State ex rel. Bolin v. Ohio EPA*, 82 Ohio App.3d 410, 612 N.E.2d 498 (9th Dist.1992) and *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586.

**{¶29}** In *Bolin*, plaintiff Bolin entered into an agreement with Shell Oil Company whereby Shell agreed to purchase Bolin's property if Bolin would reduce soil and groundwater contamination to acceptable levels. Bolin hired a company that remediated the contamination on Bolin's property, and that company then sought confirmation from the Ohio EPA that the property complied with applicable environmental laws. The Ohio EPA would neither confirm the remediation measures, nor conduct its own tests, but told the company that it reserved the right to conduct future tests. Bolin filed a declaratory-judgment action against the Ohio EPA, its director, and the state, alleging that, as a result of the Ohio EPA's refusal to confirm that his property was in compliance with Ohio's environmental statutes governing hazardous wastes and water pollution, Shell would not exercise its option to purchase his property. Bolin specifically sought a declaratory judgment that his property complied with the applicable environmental laws and was exempt from Ohio EPA regulation.

**{¶30}** The trial court granted the Ohio EPA and the other defendants' motion to dismiss the complaint under Civ.R. 12(B)(6), and Bolin appealed. As to Bolin's request for declaratory judgment, the Ninth District determined that no justiciable controversy existed between Bolin and the Ohio EPA. In reaching that determination, the Ninth District reasoned that the Ohio EPA had never claimed that Bolin's property had not been

in compliance with applicable laws, nor had it initiated any investigation or proceeding claiming noncompliance. Thus, the Ninth District affirmed the trial court's dismissal of Bolin's complaint for declaratory judgment for lack of a justiciable issue.

{¶31} In *Arnott*, a revocable living trust gave James Arnott, the trust's successor trustee, and his brother, Kenneth Arnott, the option to purchase specified parcels of farmland owned by the trust "at a price equal to the appraised value of said property as affixed for federal and/or state estate tax purposes." That price-determining phrase caused disagreement. Specifically, Kenneth and certain other beneficiaries argued that pursuant to the trust language, the option price was the fair market value as determined by an appraiser, whereas James and certain other beneficiaries contended that the trust set the option price as the appraiser's value less the estate-tax deduction allowed for farmland in either the federal or state tax code.

{¶32} Kenneth filed a complaint for declaratory judgment in probate court, seeking judicial interpretation of the provision at issue. The trial court held that the matter was appropriate for disposition through a declaratory-judgment action and concluded that the disputed phrase was unambiguous — the option price was simply the fair market value as determined by the appraisal.

{¶33} James appealed, and contended that there was insufficient evidence of a justiciable controversy to permit the declaratory-judgment action to go forward and that even if declaratory judgment was proper, the trial court had improperly interpreted the contested language of the trust.

**{¶34}** The Fourth Appellate District reviewed under an abuse-of-discretion standard on the first issue James raised, which was, whether there were grounds for proceeding on a declaratory-judgment action. *In re Arnott*, 190 Ohio App.3d 493, 2010-Ohio-5392, 942 N.E.2d 1124 (4th Dist.). Finding that the court had not abused its discretion in proceeding on the action, the appellate court moved on to the issue of whether the trial court had erred in finding that the trust language — "the appraised value * * * affixed for federal and/or state estate tax purposes" — was equivalent to "fair market value." In addressing this issue, the court employed a de novo standard of review. The court wrote,

> [a] trial court's determination of purely legal issues is never one of degree or discretion. Regardless of whether the action is styled as one for declaratory relief, the trial court must correctly apply the law.

*Id.* at ¶ 42.

**{¶35}** Reviewing the trust document de novo, the court reversed, finding that the option language was "susceptible of more than one reasonable interpretation" and, "guided by the rule that [the court] should review the Trust as a whole to determine the settlor's intent," the court ultimately determined that "the settlor intended the option price to be the value established for federal and/or state estate-tax purposes, in this case, the federal and/or Ohio qualified-use value." *Id.* at ¶ 4.

**{¶36}** As mentioned, on appeal to the Ohio Supreme Court, the court found that the abuse-of-discretion standard applies to dismissals of declaratory judgment actions as not justiciable, but a de novo standard of review applies regarding questions of law.

Applying its finding, the court noted the following:

> The determination of the meaning of the disputed language of the trust at the heart of this case is a question of law. 'A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent.' *Domo v. McCarthy*, 66 Ohio St.3d 312, 612 N.E.2d 706 (1993), paragraph one of the syllabus. Interpreting a trust is akin to interpreting a contract; as with trusts, the role of courts in interpreting contracts is 'to ascertain and give effect to the intent of the parties.' *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. This court has held that '[t]he construction of a written contract is a matter of law that we review de novo.' *Id.*

*Arnott* at ¶ 14.

The Concept of Justiciability Applied to this Case

{¶37} Here, although the trial court found that no justiciable issue existed between the parties, it interpreted the contract (the Declaration). We disagree with the trial court's finding of lack of justiciability. This case is akin to *Arnott*. A contract, the Declaration, existed, and interpretation of the Declaration was germane to resolving the parties' dispute. Because a justiciable issue existed, and the trial court in fact interpreted the contract, we review de novo.

{¶38} Upon such review, notwithstanding that the trial court erred in finding no justiciable issue, it nonetheless properly interpreted the Declaration and dismissed Counts 1, 2, and 3 of the complaint.

{¶39} As mentioned, R.C. 5311.01(F)(2)(a) defines what constitutes common property "unless otherwise provided in the declaration." The Declaration here specifically excludes the facade of the building as common property. Thus, the trial court properly dismissed Count 1 of the Association's complaint.

**{¶40}** The Association further contends that the trial court erred in dismissing Count 2, which alleged that Pointe at Gateway Condominium's control over the facade parcel ended in May 2009, because it failed to consider the actions of the appellees between the "developer-controlled period" of May 2004 through December 2011.

**{¶41}** R.C. 5311.25(B) prohibits a developer of condominium property from retaining a property interest in "any of the common elements after unit owners other than the developer assume control of the unit owners association." As already mentioned, R.C. 5311.01(F) defines various aspects of condominium property as being common elements "unless otherwise provided in the declaration." Again, the Declaration specifically excludes that facade of the building as common property. The trial court therefore properly held that there was "no legal basis * * * to ignore the directly applicable language."

**{¶42}** Therefore, the trial court's dismissal of Count 2 of the complaint was proper. Moreover, its dismissal of Count 3, which was for compensatory damages due to Pointe at Gateway Condominium's ownership of the facade parcel, was also proper because the underlying claims failed.

**{¶43}** In light of the above, the first assignment of error is overruled.

Dismissal of the Remaining Claims

**{¶44}** The second through the seventh assignments of error challenge the trial court's dismissal of the Associations remaining claims.

**{¶45}** Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo.

*Greeley v. Miami Valley Maintenance Contrs. Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991).

{¶46} The statute of limitations for the remaining claims (except Count 9, breach of contract)[2] are as follows: Count 4, failure to perform in a workmanlike manner, four years (R.C. 2305.09(D)); Count 5, consumer sales practices act, two years (R.C. 1345.10); Count 6, breach of fiduciary duty, four years (R.C. 2305.09); Count 7, negligence, four years (R.C. 2305.09); Count 8, fraudulent concealment, four years (R.C. 2305.09); Count 10, unjust enrichment, six years (R.C. 2305.07); and Counts 11 and 12, conversion and trespass to chattels, four years (R.C. 2305.09).

{¶47} The trial court found that the "operative" events that would have triggered the statutes occurred in 2004 and, therefore, were time-barred by the 2012 lawsuit.

{¶48} The Association contends that paragraph 25, contained in the "background" section of its complaint, demonstrated that the above-mentioned counts were not time-barred. The paragraph read as follows:

---

[2]Count 9, breach of contract, was not originally dismissed by the trial court. After its dismissal of the other claims, however, the trial court issued a nunc pro tunc entry dismissing Count 9 for a reason other than the statute of limitations.

From May 11, 2004, until December 14, 2011 (the date of the turnover meeting), J. Schmelzer and L. Schmelzer held a controlling interest in the Association Board of Trustees and ran the day-to-day Association operations, Association management, and handled all Association bookkeeping for that time period.

{¶49} We agree with the trial court that the claims were time-barred. Pointe at Gateway Condominium subdivided the property in March 2004, and created the Association in May 2004. Therefore, the operative facts relative to the claims occurred in 2004, and the limitation had expired when the Association filed this action in 2012.

{¶50} We are not persuaded by the Association's contention that paragraph 25 of its complaint should have saved their claims from being time-barred because appellees controlled the day-to-day operations of the property from May 2004 through December 2011. The allegation was conclusory and does not allege facts relative to the specific claims so as to survive a motion to dismiss. *See Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 8th Dist. Cuyahoga No. 97065, 2012-Ohio-90, ¶ 9-10.

{¶51} Moreover, other reasons for dismissal apart from the statute of limitations existed for most of the claims. We briefly consider them below.

Consumer Sales Practices Act

{¶52} In regard to the Association's claim of violations of the Consumer Sales Practices Act, we agree with the trial court's finding that the "Act has no application to a 'pure' real estate transaction." (Trial court's opinion, citing *Brown v. Liberty Clubs, Inc.*, 45 Ohio St.3d 191, 193, 543 N.E.2d 783 (1989); *Keiber v. Spicer Constr. Co.*, 85 Ohio App.3d 391, 392, 619 N.E.2d 1105 (2d Dist.1993)). The trial court further noted that

although this court and another Ohio court have held that the Act applies to real estate transactions involving "contracts to construct," those cases are distinguishable from this case because they involved individual purchasers buying a new home or condominium. *See Suttle v. DeCesare*, 8th Dist. Cuyahoga No. 81441, 2003-Ohio-2866, ¶ 29 (The Act "applies to transactions that include a contract to construct a residence."); *Fine v. U.S. Erie Islands Co., Ltd.*, 6th Dist. Ottawa No. OT-07-048, 2009-Ohio-1531.

**{¶53}** This case did not implicate a "contract to construct," and therefore, we find that the Consumer Sales Practices Act did not apply. The trial court properly dismissed the claim.

Breach of Fiduciary Duty

**{¶54}** In regard to the Association's breach of fiduciary duty claim, the Ohio Supreme Court has held that the Ohio Condominium Act "does not create a fiduciary relationship between developers and owners, developers and owners' associations, or developers and purchasers" and "plainly recognizes that developers, owners, and purchasers have different, and often competing, financial interests." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 283, 617 N.E.2d 1075 (1993).

**{¶55}** Further, to the extent that the breach of fiduciary duty claim related only to the Schmelzer defendants individually, the complaint did not allege that the Schmelzers owed the Association a special duty and, therefore, did not set forth a claim against the Schmelzer defendants individually.

**{¶56}** In light of the above, the trial court properly dismissed the Association's claim for breach of fiduciary duty.

Fraudulent Concealment

**{¶57}** In regard to the Association's claim of fraudulent concealment, we agree with the trial court's finding that the claim was not pled with the requisite particularity under Civ.R. 9(B). This court has held that the particularity requirement of Civ.R. 9(B) includes "'the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud.'" *Reinglass v. Morgan Stanley Dean Witter, Inc.*, 8th Dist. Cuyahoga No. 86407, 2006-Ohio-1542, quoting *Carter-Jones Lumber Co. v. Denune*, 132 Ohio App.3d 430, 433, 725 N.E.2d 330 (10th Dist.1999), citing *Baker v. Conlan*, 66 Ohio App.3d 454, 458, 585 N.E.2d 543 (1st Dist.1990).

**{¶58}** The complaint did not allege any specific instances of concealment or false representations; rather, it contained conclusory statements, which were insufficient to properly plead the claim. Therefore, the trial court properly dismissed the Association's fraudulent concealment claim.

Breach of Contract

**{¶59}** For its breach of contract claim, the Association alleged that Pointe at Gateway Condominium and the Schmelzers breached their fiduciary duties and, therefore, breached the contract with the Association. Having found that the trial court properly dismissed the breach of fiduciary claim, we necessarily find that it also properly dismissed

the breach of contract claim.

Unjust Enrichment

{¶60} In its unjust enrichment claim, the Association claimed that Pointe at Gateway Condominium wrongfully subdivided and remained in possession of the facade parcel.

{¶61} A claim of unjust enrichment requires:

(1) a benefit conferred by a Plaintiff upon a Defendant; (2) knowledge by the Defendant of the benefit; and (3) retention of the benefit by the Defendant under circumstances where it would be unjust to do so without payment.

*Miller v. Keybank Natl. Assn.*, 8th Dist. Cuyahoga No. 86327, 2006-Ohio-1725, ¶ 43.

{¶62} We are not persuaded by the Association's claim that appellees' continued possession of the Facade parcel is the conferred benefit. Generally, there can be no recovery on an unjust enrichment claim if there is an express contract covering the same subject. *See Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989). The Declaration governed the parties' rights and obligations regarding the facade parcel, and pursuant thereto, the Association never had any rights to the facade parcel. As such, an unjust enrichment claim was not available to the Association and the trial court, therefore, properly dismissed the claim.

Conversion and Trespass to Chattels

{¶63} For its conversion and trespass to chattels claims, the Association alleged that appellees converted the Association's property and monies inconsistent with the Association's right of possession, and intentionally used or "intermeddled" with the

Association's property, respectively.

**{¶64}** In *Tabar v. Charlie's Towing Serv., Inc.*, 97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132 (8th Dist.1994), this court set forth the requisite elements of conversion as follows:

> Conversion is the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner. *Bench Billboard Co. v. Columbus* (1989), 63 Ohio App.3d 421, 579 N.E.2d 240; *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 24 Ohio B. 160, 493 N.E.2d 289. In order to prove the conversion of the property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. *Id.* The measure of damages in a conversion action is the value of the converted property at the time it was converted. *Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141.

**{¶65}** A claim of conversion must be based on the taking of identifiable personal property. *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-5077, 797 N.E.2d 1002, ¶ 27 (8th Dist.)

> (Because the property subject to appellant's conversion claim is not identifiable, personal property but rather comprises monies appellant claims are due and owing him under an agreement, appellant can prove no set of facts that would entitle him to recover on his claim for conversion and dismissal was appropriate under Civ.R. 12(B)(6).).

**{¶66}** The Association contends that its allegations contained in paragraphs 88 and 99 of its complaint were sufficient to survive a motion to dismiss. Paragraph 88 (contained in the unjust enrichment count) alleged that:

> [u]pon information and belief, [Pointe at Gateway Condominium] failed to, among other things, make all monthly maintenance fee payments to the Association attributable to unsold units and/or for units otherwise owned by

[Pointe at Gateway Condominium] from the date the Declaration was filed up to the sale date of said unit(s).

{¶67} Paragraph 99 alleged that appellees

unlawfully, wrongfully, and fraudulently exercised * * * dominion and control over [the Association's] property and monies inconsistent with the right of possession of [the Association] by unlawfully using [the Association's] monies and property for [appellees'] own business and benefit.

{¶68} The counts do not allege the conversion of identifiable personal property, and therefore, the conversion claim was properly dismissed.

{¶69} A trespass to chattel occurs when one intentionally dispossesses another of their personal property. *Conley v. Caudill*, 4th Dist. Pike No. 02CA69775, 2003-Ohio-2854, ¶ 7. The complaint does not allege what chattel was trespassed upon and, as such, on its face fails to state a claim upon which relief can be granted.

{¶70} In light of the above, the trial court properly dismissed Counts 4 through 12 of the Association's complaint, and the Association's second through seventh assignments of error are overruled.

Permanent Injunction

{¶71} In its final assignment of error, the Association contends that the trial court erred in granting Pointe at Gateway Condominium's motion for a permanent injunction, thereby enjoining the Association from using reserve funds on non-capital expenses.

{¶72} The standard of review for this court regarding the granting of an injunction by a trial court is whether the trial court abused its discretion. *Perkins v. Quaker City*, 165 Ohio St. 120, 125, 133 N.E.2d 595 (1956). In an action for a temporary or

permanent injunction, the plaintiff must prove his or her case by clear and convincing evidence. *Franklin Cty. Dist. Bd. of Health v. Paxon*, 152 Ohio App.3d 193, 202, 2003-Ohio-1331, 787 N.E.2d 59 (10th Dist.).

{¶73} Clear and convincing evidence has been defined by the Supreme Court of Ohio as that measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt, as in criminal cases. *Id.* It does not mean clear and unequivocal. *Id.*

{¶74} In determining whether to grant injunctive relief, courts take into consideration the following four factors: (1) the likelihood or probability of a plaintiff's success on the merits; (2) whether the issuance of the injunction will prevent irreparable harm to the plaintiff; (3) what injury to others will be caused by the granting of the injunction; and (4) whether the public interest will be served by the granting of the injunction. *Corbett v. Ohio Bldg. Auth.*, 86 Ohio App.3d 44, 49, 619 N.E.2d 1145 (10th Dist.1993).

{¶75} In granting the motion for permanent injunction, the trial court found that the appellees were irreparably harmed by the Association's use of reserve funds to finance this litigation. The Association now contends that there was no evidence of irreparable harm. We disagree.

{¶76} At the motion hearing, Scott Phillips, a local realtor, testified for the

appellees.   According to Phillips, a condominium association would suffer in value and saleability if its reserve funds are depleted.   Phillips was of the opinion that "among the most important factors that affect the overall value of a condominium unit is the adequacy of the condominium's reserve funds."   According to Phillips, one potential buyer of a Gateway condo cancelled his intent to purchase a unit because of this litigation.

{¶77} Phillips opined that

immediate and irreparable damage will occur if the reserve funds at the Condominium are diminished or depleted for purposes other than those budgeted for in the reserve study * * * and the units will suffer lower market values as a direct result.   Moreover, the Condominium will also suffer a poor market reputation as another result of this diminishment or depletion.

{¶78} On this record, we find that appellees (and the individual unit owners) would have been irreparably harmed if the Association had been permitted to continue using reserve funds for the expense of this litigation.

{¶79} Moreover, this type of expenditure was not authorized by the condominium Bylaws.   The Association contends that the following sentence in the Bylaws authorizes such expenditures:   "[e]xtraordinary expenditures not originally included in the annual estimate which may be necessary for the year, shall be charged first against such reserve fund."   But, when the sentence is read in context with the rest of the section where it is contained, the plain language does not authorize the expenditures at issue.   Specifically, the section provides, in relevant part, as follows:

Section 3.     Reserve for Contingencies and Replacements.     The Association shall be obligated to build up and maintain a reasonable working capital reserve fund to finance the cost of repair or replacement of the Common Areas and Facilities.   * * * Extraordinary expenditures not originally included in the annual estimate which may be necessary for the

year, shall be charged first against such reserve fund.

Bylaws, Article V, Section 3.

{¶80} The above-quoted section does not authorize the Association's use of reserve

funds for litigation expenses.

{¶81} Further, Article V, Section A of the Declaration, governing assessments,

provides as follows:

> (A) General. Assessments for the management, maintenance, repair and
> insurance of the Common Areas and Facilities and amounts determined by
> the Board of Managers of the Association for the establishment and
> maintenance of the reserve fund to meet the cost and expense of repair and
> replacement of the Common Areas and Facilities together with the payment
> of the Common expenses, shall be made in the manner herein, and in the
> manner provided by the Bylaws.

{¶82} When the Bylaws and Declaration are read in context and together, it is clear

that they do not authorize the use of the reserve fund for litigation and associated costs.

{¶83} In light of the above, the trial court did not abuse its discretion in granting

appellees' motion for a permanent injunction. The eighth assignment of error is therefore

overruled.

{¶84} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga

County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

____

LARRY A. JONES, SR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
TIM McCORMACK, J., CONCUR