[Cite as *Pinnacle Condominiums Unit Owners' Assn. v. 701 Lakeside, L.L.C.*, 2011-Ohio-5505.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96554**

## PINNACLE CONDOMINIUMS UNIT OWNERS' ASSOCIATION

PLAINTIFF-APPELLANT

vs.

## 701 LAKESIDE, LLC, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-703063

**BEFORE:**   Keough, J., S. Gallagher, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   October 27, 2011

**ATTORNEYS FOR APPELLANT**

Robert E. Kmiecik
Kevin M. Fields
Kaman & Cusimano, LLC
50 Public Square
Suite 2000
Cleveland, OH 44113

**ATTORNEY FOR APPELLEES**

John J. Ricotta
The Standard Building
1370 Ontario Street
Suite 1810
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

**{¶ 1}** Plaintiff-appellant, Pinnacle Condominiums Unit Owners' Association ("the Association"), appeals the trial court's judgment staying proceedings and compelling arbitration. For the reasons that follow, we affirm.

I

**{¶ 2}** The Association is a nonprofit corporation organized to provide a corporate entity for the owners of 80 condominium units located in a building known as the Pinnacle Property at 701 Lakeside Avenue in Cleveland. Pinnacle 701, LLC (the "Developer"), owned the real property upon which the condominiums were built and was the developer for the project. 701 Lakeside, LLC (the "Garage Owner"), owns and operates two levels of a parking garage located directly beneath the condominiums.

**{¶ 3}** The Developer built the Pinnacle Property on top of an existing parking garage and added three additional levels to the parking garage to provide parking for Pinnacle Property condominium owners. The condominium owners enter the parking garage through an automated gate and travel up the lower two levels of the parking garage to reach their parking spaces, which are located on the third, fourth, and fifth levels of the parking garage. Residents of the Cloak Factory Condominium, located at 635 Lakeside Avenue, use the second level of the parking garage for their parking spaces.

**{¶ 4}** In 2004, the Garage Owner and the Developer executed a reciprocal easement and operating agreement ("REA") that granted various easements to the Garage Owner and future Pinnacle Property owners to use the gates, ramps, stairwells, elevators, and other components of the Pinnacle Property, and defined the corresponding obligations to contribute to certain expenses associated with the easements.

**{¶ 5}** It was unclear under the REA whether arbitration to resolve disputes related to the REA was dependent upon the agreement of the parties or mandatory. Section 13.1 of the REA provided that "[w]henever a dispute shall arise among the Owners of the Parcels in connection with the terms, covenants, rights, obligations, easements and/or agreements contained in this REA * * * the matters in dispute *may be arbitrated*, upon the agreement of all parties involved, in accordance with the procedures set forth in Article 14 hereof. Where required in a specific section of this REA, however, arbitration shall be mandatory." (Emphasis added.)

**{¶ 6}** Section 14.1 of the REA stated that "[a]ll disputes arising out of or in any

way connected with this REA *shall be subject to binding arbitration.* The Owner (or any other person or entity entitled to do so) demanding arbitration shall specify in writing the reason for the arbitration, stating with specificity the section of this REA under which arbitration is demanded and the dispute between the Owners, and forward such demand to the Owner against whom arbitration is sought. Upon receipt of the demand for arbitration, the dispute shall be at issue, provided a copy of such demand shall have been filed with the American Arbitration Association." (Emphasis added.)

{¶ 7} In 2005, the Garage Owner and Developer executed an agreement that amended various sections of the REA ("Amended REA"). As pertinent to this case, the Amended REA replaced Section 13.1 of the REA in its entirety with the following language to make clear that binding arbitration of disputes was mandatory: "Whenever a dispute shall arise among the Owners of the Parcels in connection with the terms, covenants, rights, obligations, easements, and/or agreements contained in this REA, * * * the matters in dispute shall be arbitrated in accordance with the procedures set forth in Article 14 hereof if such disputed matters are not resolved upon the agreement of all parties involved."

{¶ 8} Section 14.1 of the REA was amended to provide that "[a]ll disputes arising out of or in any way connected with this REA which are not resolved upon the agreement of all parties involved shall be subject to binding arbitration."

{¶ 9} Also in 2005, the Developer executed an agreement that granted easements to the Cloak Factory Condominium and its occupants for the use of certain recreational

facilities and terraces located on the Pinnacle Property.

{¶ 10} On September 2, 2009, the Association filed suit against the Garage Owner, the Developer, 635 Lakeside, LLC (also known as the Cloak Factory Condominium), and the Cloak Factory Condominium Unit Owners' Association ("appellees"). The Association asserted claims for breach of contract, unjust enrichment, declaratory judgment, preliminary and permanent injunction related to various easement agreements between the parties under the REA. Appellees subsequently answered the complaint and asserted counterclaims for breach of contract and unjust enrichment.

{¶ 11} On October 8, 2009, the Association filed a motion for a temporary restraining order in which it asked the trial court to restrain the Garage Owner from denying its members access to the elevator on the first floor of the garage. The trial court subsequently granted the Association's motion and ordered that the Garage Owner immediately remove the padlocks on the elevators.

{¶ 12} On November 2, 2009, the trial court held a hearing regarding the Association's request for a preliminary injunction. On December 1, 2009, the trial court issued a journal entry and opinion granting the Association's request for a preliminary injunction and ordering appellees to refrain from denying Pinnacle residents access to the elevators during the pendency of the lawsuit.

{¶ 13} On December 9, 2009, the Association filed its answer to appellees' counterclaims and posted a $1,000 bond in association with the preliminary injunction.

{¶ 14} The trial court held a case management conference on February 1, 2010

and a telephonic conference on June 22, 2010, at which it set dates for discovery cutoff, dispositive motions, and trial. The trial court subsequently granted the Association's motion to file an amended complaint to include an additional claim against Pinnacle 701, LLC. Appellees filed an amended answer and counterclaims on August 16, 2010.

{¶ 15} On August 24, 2010, the court referred the case to business mediation, which took place on October 29, 2010, but was unsuccesful. At the final pretrial conference on December 15, 2010, the court extended the discovery and dispositive motion deadlines to January 28, 2011 and rescheduled the trial to March 28, 2011.

{¶ 16} On January 3, 2011, appellees filed a motion to stay the case and compel arbitration as required by the Amended REA. The Association opposed the motion and filed a motion for summary judgment.

{¶ 17} On February 22, 2011, the trial court granted appellees' motion, stayed the proceedings, and referred the matter to binding arbitration. The Association appeals from this order.

II

{¶ 18} In its single assignment of error, Pinnacle contends that the trial court erred in compelling arbitration because appellees waived their right to insist upon arbitration.

{¶ 19} Like any other contractual right, the right to arbitration may be waived. *Rock v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1992), 79 Ohio App.3d 126, 128, 606 N.E.2d 1054. But in light of Ohio's strong policy in favor of arbitration, waiver of the right to arbitrate is not to be lightly inferred. *Griffith v. Linton* (1998), 130 Ohio

App.3d 746, 751, 721 N.E.2d 146. A party asserting waiver must prove the waiving party (1) knew of the existing right to arbitrate; and (2) acted inconsistently with that right. *Checksmart v. Morgan*, 8th Dist. No. 80856, 2003-Ohio-163, ¶22. "'The essential question is whether, based upon the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate.'" Id., quoting *Wishnosky v. Star-Lite Bldg. & Dev. Co.* (Sept. 7, 2000), 8th Dist. No. 77245.

{¶ 20} Among the factors a court may consider in determining whether the totality of circumstances supports a finding of waiver are: (1) whether the party seeking arbitration invoked the jurisdiction of the trial court by filing a complaint, counterclaim, or third-party complaint without asking for a stay of proceedings; (2) the delay, if any, by the party seeking arbitration in requesting a stay of proceedings or an order compelling arbitration; (3) the extent to which the party seeking arbitration participated in the litigation, including the status of discovery, dispositive motions, and the trial date; and (4) any prejudice to the non-moving party due to the moving party's prior inconsistent actions. *U.S. Bank, N.A. v. Wilkens*, 8th Dist. No. 93088, 2010-Ohio-262, ¶31, citing *Phillips v. Lee Homes, Inc.* (Feb. 17, 1994), 8th Dist. No. 64353.

{¶ 21} The question of waiver is usually a fact-driven issue and an appellate court will not reverse the trial court's decision absent a showing of abuse of discretion. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, ¶10. A court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio

St.3d 217, 219, 450 N.E.2d 1140.

{¶ 22} The Association argues that appellees invoked the jurisdiction of the court by asserting counterclaims against the Association, despite their knowledge of the mandatory arbitration provision. It further contends that appellees actively participated in the litigation by, among other things, attending hearings and offering witnesses and exhibits regarding the Association's request for a temporary restraining order, and exchanging written discovery.

{¶ 23} Further, the Association contends that prior to filing the lawsuit, it demanded arbitration in accordance with Section 14.1 of the REA in a letter dated April 3, 2009. In its written response, appellees asserted that the Association was required to advise them in writing of the specific language in the REA that it was disputing. The Association sent additional correspondence dated June 29, 2009, in which it specified the particular provision of the REA upon which it demanded arbitration and requested a mutually convenient date for the arbitration. When appellees did not respond, the Association filed suit.

{¶ 24} The Association contends that in light of this correspondence, appellees clearly had notice of the arbitration provision.

{¶ 25} Appellees respond that it was unclear under the REA whether arbitration was mandatory or required the agreement of the parties, and they did not know about the mandatory arbitration provision of the Amended REA until shortly before they filed their motion for stay and compelling arbitration. Appellees insist that upon learning that

arbitration was mandatory, they immediately filed their motion for stay.

{¶ 26} The record, however, refutes appellees' assertion. The record reflects that the Association filed its complaint on September 2, 2009. The next day, it filed complete copies of the documents referenced in its complaint. Those documents included the REA, the Amended REA, and the easement and use agreement between Pinnacle 701, LLC and 635 Lakeside, LLC. Therefore, as of September 3, 2009, both the Association and appellees were on notice that under the Amended REA, binding arbitration of their dispute was mandatory.

{¶ 27} We are curious why the Association filed suit if, as evidenced by its correspondence to appellees, it wanted arbitration. Because appellees' consent to its request for arbitration was not necessary under the Amended REA, the Association could have simply filed for arbitration with the American Arbitration Association. Similarly, because appellees were on notice as of September 3, 2009, that arbitration of any dispute was subject to mandatory, binding arbitration, their assertion that they only learned that arbitration was mandatory shortly before filing their motion for stay on January 3, 2011 seems doubtful.

{¶ 28} Nevertheless, this court finds no abuse of discretion in the trial court's judgment staying the matter and compelling arbitration some 16 months after the case was filed. Both parties were on notice immediately upon filing suit that binding arbitration was mandatory under the Amended REA. Thus, the Association's assertion that appellees waived their right to arbitration by participating in the litigation seems

rather disingenuous. Further, the parties had not engaged in extensive litigation regarding the merits of the Association's claims when the trial court stayed the case. The record demonstrates that the majority of activity between the Association's filing of suit and the court's referral to arbitration consisted of litigating the Association's request for a temporary restraining order and preliminary injunction and participating in business mediation. Further, discovery was not yet complete, as evidenced by the trial court's order in December 2010 after the final pretrial extending the discovery deadline and rescheduling the trial. Under these circumstances, the trial court's judgment staying the proceedings and referring the matter to binding arbitration was not unreasonable, arbitrary, or unconscionable.

{¶ 29} Finding no abuse of discretion, we affirm the trial court's judgment. Appellant's assignment of error is overruled.

Affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR