[Cite as *701 Lakeside, L.L.C. v. Pinnacle Condominium Unit Owners Assn.*, 2024-Ohio-2899.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

701 LAKESIDE, LLC,                          :

      Plaintiff-Appellant,            :

                                                                          No. 112441

      v.                                          :

PINNACLE CONDOMINIUM UNIT           :
OWNERS ASSN., ET AL.,

      Defendants-Appellees.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-907567

---

### *Appearances:*

Consolo Law Firm Co., LPA, and Frank Consolo, *for appellant*.

James J. Reagan, *for appellees*.

ON RECONSIDERATION

EMANUELLA D. GROVES, J.:

{¶ 1}  Pursuant to App.R. 26(A)(1)(a), plaintiff-appellant 701 Lakeside, LLC filed an application for reconsideration of this court's opinion in *701 Lakeside, LLC v. Pinnacle Condominium Unit Owners Assn., et al.*, 2024-Ohio-1269 (8th Dist.).

Upon review, appellant's motion for reconsideration is granted. The opinion released in this case by this court on April 4, 2024, is hereby vacated and substituted with this opinion.

{¶ 2} Plaintiff-appellant, 701 Lakeside, LLC ("701 Lakeside") appeals the judgment of the trial court denying its motion for declaratory judgment on February 6, 2023. Upon review, we affirm the trial court's decision.

{¶ 3} On November 28, 2018, 701 Lakeside filed a complaint against defendants-appellees Pinnacle Condominiums Unit Owner's Association ("PCUOA") and Coral Management LLC. It raised claims for declaratory judgment, civil trespass, conversion of property, unjust enrichment, violation of R.C. 5311.23, negligence, and civil theft. The majority of the claims stem from a dispute over whether the first and second floors of the parking garage below the Pinnacle Condominiums are considered part of the condominium property or the common elements as outlined in the Declaration of Condominium Ownership ("Condominium Declaration") and of easements outlined in the Reciprocal Easement Agreement and Amended Reciprocal Easement Agreement ("REAs"), restrictions, and covenants for Pinnacle Condominiums. During the relevant time, 701 Lakeside owned and operated the basement, first, and second levels of the parking garage, and Gus Georgalis ("Georgalis") was the managing member of 701 Lakeside.

**The Parking Garage and Condominium Project**

{¶ 4} Initially, the parking garage had three levels: a basement, first, and second floor. Georgalis conveyed the basement-level air rights[1] from 701 Lakeside to the Greater Cleveland Regional Transit Authority ("RTA"). In 2003, Georgalis conceived a condominium development project and formed Pinnacle 701, LLC to develop the air space above the garage's second floor[2] into the Pinnacle condominiums (collectively "Pinnacle"). Pinnacle also added three new garage levels and 701 Lakeside constructed ramps on the first and second levels of the garage. The ramps provided bypass access to the three new Pinnacle-owned garage levels, which would provide parking for the condominium project in the new five-level garage.

**The Original REA**

{¶ 5} On May 20, 2004, 701 Lakeside and Pinnacle, both controlled by Georgalis, recorded a Reciprocal Easement and Operating Agreement ("REA") with the Cuyahoga County Recorder. The REA was recorded as instrument 200405211109 and detailed the rights, duties, and obligations of the parties under the REA. The REA identified the easements 701 Lakeside granted to Pinnacle as the developer of the condominium and garage projects. The REA granted Pinnacle

---

[1] "The right to use the air space superjacent to the ground is one of the rights in land." *Money from Heaven: Should Qualified Air Rights Donations be Characterized as Interests in Land or Buildings? Why does It Matter,* 50 Clev.St.L.Rev. 283, 288 (2002-2003).

[2] Greater Regional Transit Authority's air rights included the air space between the basement surface level and the basement roof.

use of the first and second floors of the garage as well as easements for access and ingress from the street to the condominiums via the first- and second-floor ramps constructed by Pinnacle. The original REA acknowledged in its recitals one of the purposes of the REA was to create permanent easements:

> J. Each of the parties to this REA intends that the 701 Lakeside Property and the Pinnacle Property will interrelate and function to their mutual advantage and benefit. Therefore, each party desires to create certain rights, privileges, obligations, duties, and easements and to impose certain restrictions and covenants upon the respective parcels, which shall benefit not only the parcels but also the owners of such parcels and the owner's respective grantees, successors, assigns and permittees (hereinafter defined), and which shall bind not only the respective owners but also each owner's respective grantees, successors, assigns and permittees[.] REA instrument 200405211109.

**{¶ 6}** Certain easements were intended to run with the land.

> NOW, THEREFORE, 701 Lakeside and Pinnacle each hereby grants, agree, and declare that the 701 Lakeside Property and the Pinnacle Property shall be held, sold, and conveyed subject to the following easements, restrictions, obligations, covenants, rights, and conditions which are to protect the value and desirability of the Project and the Parcels and which shall run with the land and be binding on and inure to the benefit of the respective owners and all parties having any right, title, or interest in the parcels or any part thereof, their respective heirs, successors, and assigns.

**{¶ 7}** Article 2 of the original REA identified the following relevant easements:

> 2.1 Grant of Appurtenant Easements Encumbering 701 Lakeside Property. Subject to all of the terms, covenants, conditions, and restrictions of this REA, the 701 Lakeside Property Owner, for itself, its successors, and assigns, does hereby grant to and for the benefit of the Pinnacle Property, the Owner thereof and its respective successors and assigns, the appurtenant easements outlined in this Section 2.1. Except as otherwise noted in this REA, each easement shall be for the nonexclusive use of the Pinnacle Property Owner and its respective

successors and assigns. Each easement shall commence on the date hereof and shall continue in perpetuity (so long as an improvement is located on the 701 Lakeside Property) and shall include all rights of access reasonably necessary to enjoy same:

. . .

b) an easement relative to all walkways, driveways, doorways, and stairways of the 701 Lakeside Property for pedestrian and vehicular ingress to and egress from the Pinnacle Property and the public sidewalks and roadways (notwithstanding the preceding, the grant of this easement shall not entitle the Pinnacle Property Owner, its successors, assigns or Permittees, the right to use the ramps and parking areas adjoining or leading exclusively to the RTA Parcel; or (ii) the parking areas on the First Floor Air Rights Parcel described on exhibit G or Second Floor Air Rights Parcel described on exhibit H).

{¶ 8} Notably, these easements provided the condominium owners' sole means of accessing the PCUOA-owned parking on the parking garage's third, fourth, and fifth floors by vehicle or pedestrian traffic.

**The Amended REA**

{¶ 9} 701 Lakeside executed an amended REA on November 28, 2005, with Pinnacle 701 LLC. Georgalis was the principal of both entities at that time. 701 Lakeside amended the REA by deleting sections 2.1 f and k from the REA, which stated:

(f) an easement to use the first-floor ramp easement as described in Exhibit "I" for vehicle access and ingress;

. . .

(k) an easement to use the second-floor ramp easement as described in Exhibit "N" for vehicle access and egress.

{¶ 10} 701 Lakeside replaced these sections with the same language, except the term vehicle was removed:

(f) an easement to use the first-floor ramp easement as described in Exhibit "I" for access and ingress;

. . .

(k) an easement to use the second-floor ramp easement as described in Exhibit "N" for access and egress.

{¶ 11} The Pinnacle Condominium Declaration was recorded on December 5, 2005, days after the amended REA, creating the PCUOA as a matter of law. Over the next several years, disputes centering around the obligations and rights of the parties concerning access and cost-sharing of the garage have been litigated.

**The First Arbitration**

{¶ 12} On September 2, 2009, PCUOA filed a complaint in Cuyahoga C.P. No. CV-09-703063 seeking a temporary restraining order prohibiting 701 Lakeside from denying PCUOA members access to the garage's first floor elevator. The trial court granted PCUOA's motion and ordered 701 Lakeside to remove the padlocks it had placed on the elevators immediately. Subsequently, 701 Lakeside filed a motion seeking an order from the trial court invoking mandatory arbitration under the terms of the amended REA. The trial court granted 701 Lakeside's motion to enforce the mandatory arbitration provision within the amended REA agreement. PCUOA appealed, and we affirmed the trial court's order. *Pinnacle Condominiums Unit Owners' Assn. v. 701 Lakeside, LLC*, 2011-Ohio-5505 (8th Dist.). The matter was arbitrated in American Association of Arbitration Case No. 53-115-0045311, captioned *In the Matter of Arbitration Between 701 Lakeside LLC. v. Pinnacle*

*Condominium Owners Association.* The arbitrators were tasked with interpreting the scope, rights, and obligations of 701 Lakeside and PCUOA under the terms of the REAs.

{¶ 13} The arbitrators issued a final award on August 15, 2012, whereby the panel interpreted the meaning, scope, and purpose of the REAs. During its analysis, the arbitration panel followed the well-settled precedent of *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311 (1996). Accordingly, the panel resolved any ambiguities in the REA language against 701 Lakeside.

{¶ 14} Among its findings, the Arbitrators interpreted the garage ramps and parts of the garage up to the PCUOA garage as "common area elements." Moreover, the arbitrators granted PCUOA's counterclaim for a declaration that the PCUOA and its unit owners have a permanent nonexclusive easement of ingress and egress through the gates, ramps, stairwells, and elevators in and through the parking garage owned and operated by 701 Lakeside. The trial court adopted the Arbitrator's findings and determined that PCUOA was the dominant holder of a permanent nonexclusive easement of ingress and egress that runs with the land. Ultimately, the easement was transferred, by operation of law, from Pinnacle to PCUOA.

{¶ 15} The trial court permanently barred 701 Lakeside from interfering with the easements in the future, ordered confirmation of the arbitration award, and entered final judgment on March 20, 2013, which 701 Lakeside did not appeal.

**The Second Arbitration**

{¶ 16} The parties entered a second arbitration captioned *In the Matter of Arbitration Between 701 Lakeside LLC. v. Pinnacle Condominium Owners Association*, arbitration Case No. 01-14-0001-893. The claims in the second arbitration related to common area expenses, validity and scope of easements, garage maintenance, and enforcement of the REA and the August 15, 2012 final award terms.

{¶ 17} The arbitrators issued their findings on June 1, 2016. The arbitrators concluded that the prior arbitration panel's August 15, 2012 decision granted Pinnacle's counterclaim for a declaration that, under the REA, Pinnacle has permanent nonexclusive easements of ingress and egress through the parking garage owned and operated by 701 Lakeside. The arbitrators found the doctrine of res judicata applicable to issues of enforceability and validity of the REAs, which addressed the scope of the easements conveyed in the REAs. The second arbitration panel concluded that under the doctrine of res judicata,

> Pinnacle and its members have a permanent nonexclusive easement of ingress and egress through the gates, ramps, stairwells, walkways, and elevators in and through the parking garage owned and operated by 701 Lakeside. 701 Lakeside is permanently barred from doing anything to interfere with this easement. (Final Award, June 1, 2016).

{¶ 18} The trial court ratified the second arbitration award and again permanently barred 701 Lakeside from doing anything to interfere with the REAs.

**Current Litigation**

{¶ 19} In the instant case, on November 28, 2018, 701 Lakeside filed a verified complaint with seven causes of action. Among them, 701 Lakeside asked the trial court for a declaratory judgment that the REAs were null and void in light of the Condominium Declaration. The parties engaged in substantial motion practice. Both PCUOA and Coral filed motions for summary judgment, which the trial court denied.

{¶ 20} Additionally, 701 Lakeside filed its own motion for summary judgment concerning the claims for failure to comply with R.C. 5311.23 and trespass. The trial court also denied its motion for summary judgment on March 23, 2022. 701 Lakeside subsequently filed a motion for declaratory judgment on November 29, 2022, seeking a declaration that the REAs are null and void in light of the Condominium Declaration. 701 Lakeside claimed the Condominium Declaration excludes the basement and the first and second levels of the garage from the condominium property and common elements. Citing conflicting terms in the Condominium Declaration and the REAs, 701 Lakeside argued that the Condominium Declaration is the controlling contract because it was filed after the REAs.

{¶ 21} The trial court disagreed and dismissed 701 Lakeside's first cause of action for declaratory judgment on February 6, 2023, for two reasons. First, the trial court found that 701 Lakeside lacked standing to seek a declaratory judgment under the Condominium Declaration pursuant to R.C. 5311.23(A) and (B). Moreover, the

trial court found that the validity of the REAs had been addressed in prior litigation and was barred by res judicata.

{¶ 22} On February 24, 2023, 701 Lakeside filed its notice of appeal of the trial court's dismissal of its motion for declaratory judgment, raising one assignment of error. We affirmed the trial court's order on April 4, 2024. Appellants filed a motion for en banc consideration and reconsideration of this court's decision and journal entry on April 15, 2024.

{¶ 23} Appellants allege that this court applied an abuse-of-discretion standard of review, instead of a de novo standard of review, in considering whether the trial court erred when it determined that Appellant "lacked standing" because it was not an "interested person" under the terms of the Condominium Declaration pursuant to R.C. 5311.23(B).

{¶ 24} We granted Appellants motion for reconsideration to clarify the standard of review this court applied in its April 4, 2024 opinion.

### Assignment of Error

The trial court erred when it denied appellant's motion for a declaratory judgment in its favor on the first cause of action, declaring that the REA and amended REA are null and void as a matter of law.

## Standard of Review

{¶ 25} "[A]n appellate court reviewing a declaratory-judgment matter should apply an abuse-of-discretion standard in regard to the trial court's holding concerning the appropriateness of the case for declaratory judgment, i.e., the matter's justiciability, and should apply a de novo standard of review in regard to

the trial court's determination of legal issues in the case." *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1. Whether a party has standing to bring an action is a question of law that we review de novo. *E.g.*, *State ex rel. Ames v. Portage Cty. Bd. of Revision*, 2021-Ohio-4486, ¶ 8.

**Condominium Instruments**

{¶ 26} This case centers on whether the trial court erred in determining that 701 Lakeside was not an "interested person" under the terms of the Condominium Declaration pursuant to R.C. 5311.23 (A) and (B). The Ohio Condominium Act, codified in R.C. Ch. 5311 and its amendments, outlines the relationships, rights, and remedies that safeguard owners, condominium associations, and purchasers from developer misconduct. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274, 280 (1993). The objective of R.C. Ch. 5311 is to define and regulate the legal framework surrounding condominium development, including the interrelationship between condominium developers and unit owners' associations. *Id.*

{¶ 27} This objective is achieved through various "Condominium Instruments." Condominium Instruments are defined in R.C. 5311.01(M) and include the declaration, accompanying drawings, plans, the bylaws of the unit owner's association, the condominium development disclosure statement described in section R.C. 5311.26, any contracts about the management of the condominium property, and any other documents, contracts, or instruments establishing ownership of or exerting control over a *condominium property* or unit.

R.C. 5311.01(M). The relevant condominium instruments in this matter are the REAs and Condominium Declaration. Appellants argue that under a de novo review, this court must consider the provisions of the Condominium Declaration, which specifically prohibited Appellees from trespassing on the basement and first and second levels of the garage. Appellants' argument lacks merit. Both REAs and Condominium Declarations are condominium instruments subject to declaratory judgment outlining the party's contractual rights and obligations. *See* R.C. 5311.01(M) and 5311.23(B).

{¶ 28} REAs outline the easement holders' rights and obligations. *Pinnacle Condominiums Unit Owners' Assn.* at ¶ 4. In contrast, the Condominium declarations and bylaws represent contractual agreements among the unit owners themselves and between the unit owners and the association. *State ex rel. Curd v. Backhaus*, 56 Ohio App.2d 79, 81 (1977).

{¶ 29} An REA is a condominium instrument that memorializes the contractual rights and obligations of the easement holders, adhering to standard rules of contract interpretation. *Pinnacle* at ¶ 4. 701 Lakeside is named as a party in the REA and owner of the servient estate, and Pinnacle LLC is the dominant estate owner. (REA section 12.1). The REA terms bind all present and future dominant and servient estate owners. It is undisputed that appellants are an interested party with rights and obligations under the REA. A prior arbitration award outlined the scope of the easements and the respective contractual rights and obligations of the easement owners pursuant to the terms of the REA.

{¶ 30} Condominium Declarations are contracts between the association and the purchasers and are also subject to standard contract interpretation. *Georgalis v. Cloak Factory Condominium Unit Owners' Assn.,* 2021-Ohio-66, ¶ 13 (8th Dist.). *E.g., Heba El-Attar v. Marine Towers E. Condominium Owners' Assn.* 2018-Ohio-3274, ¶ 9 (8th Dist.) This distinction underlines the different legal frameworks governing the relationship between condominium developers, owners, associations, and agents.

{¶ 31} When disputes between the Condominium Unit Owners' Association and other stakeholders arise, R.C. 5311.23(A) permits a unit owner's association to obtain damages for an injury caused by a breach of the condominium instruments by a declarant, developer, agent, unit owner, or any person entitled to occupy a unit. *Akerstrom v. 635 W. Lakeside, Ltd.*, 2018-Ohio-98, ¶ 11 (8th Dist.).

{¶ 32} Conversely, R.C. 5311.23(B) allows any "interested person," including a condominium owners' association, to obtain 1) a declaratory judgment to determine its legal relations under a condominium instrument or 2) an injunction against a declarant, developer, agent, unit owner, or person entitled to occupy a unit that threatens or fails to comply with its obligations under the instrument. *Id.* at ¶ 12.

**Interested Person Pursuant to R.C. 5311.23(B).**

{¶ 33} 701 Lakeside claims it is an "interested person" under the Condominium Declaration, pursuant to R.C. 5311.23(A) and (B). Preliminarily, we note that R.C. 5311.23(A) governs claims for civil damages, and R.C. 5311.23(B) is

the vehicle for declaratory judgments or injunctive relief. Since 701 Lakeside's assignment of error concerns a claim for a declaratory judgment, we will consider whether 701 Lakeside is an interested person with standing to seek a declaratory judgment under R.C. 5311.23(B).

{¶ 34} The term "interested person" is not defined in the statute. However, "'the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.'" *State ex rel. Flanagan v. Lucas*, 2014-Ohio-2588, ¶ 17. *State ex rel. E. Cleveland Fire Fighters' Assn., Local 500 v. Jenkins,* 2002-Ohio-3527, ¶ 11, quoting *Sierra Club v. Morton,* 405 U.S. 727 (1972). We have previously held "[u]nder R.C. 5311.23 and 5311.20, the association is the party entitled to enforce the obligations possessed or imposed upon the unit owner's association by statute or otherwise." *Akerstrom* ¶ 16.

{¶ 35} 701 Lakeside offers *Pointe at Gateway Condo Owner's Assn.*, in support of its claim that it is an interested person under R.C. 5311.23. *Pointe at Gateway Condo Owner's Assn. v. Schmelzer,* 2013-Ohio-3615 (8th Dist.). In Gateway, the condominium owners' association brought a claim for a declaratory judgment against the developer and owner of a historical building to prevent the building owner from retaining ownership of the facade of the building pursuant to the terms of the condominium declaration. *Id.* The action was commenced by the condominium unit owners' association against the developer. Under R.C. 5311.23(A), "a declarant, developer, agent, unit owner, or any person entitled

to occupy a unit is liable for damages in a civil action" for a breach of the condominium declarations.

{¶ 36} Moreover, the association sought a declaratory judgment pursuant to R.C. 5311.23(B) to determine its rights concerning the facade of the building under the terms of the condominium instruments. Because the association and owner/developer were persons whose rights and obligations were defined in the condominium declarations, the association was an "interested person" under R.C. 5311.23, with standing to seek a declaratory judgment determining those rights and obligations. R.C. 5311.23(B).[3] The court, in *Pointe at Gateway Condo Owner's Assn.,* interpreted the terms of the declaration and ultimately determined, under the plain meaning of the language in the contract, that the owner/developer had a right to ownership and control of the facade of the building. The instant case is distinguishable.

{¶ 37} Once 701 Lakeside conveyed its interests in the development to Pinnacle, it retained only its ownership interests in the appurtenant easements as the servient estate. The condominium instruments that determine the rights and obligations concerning 701 Lakeside's ownership interests are the REAs. 701 Lakeside acknowledges that prior litigation addressed the rights and obligations of the PCUOA and 701 Lakeside in light of the REAs. Still, it claims it is entitled to enforce the terms of the Condominium Declaration.

---

[3] Until the condominium owners' association is created by recording the condominium declaration and bylaws, the developer acts as the association. *See Mangano v. 1033 Water St., L.L.C.*, 2018-Ohio-5349, ¶ 35 (8th Dist.).

{¶ 38} We find nothing in the record to indicate that 701 Lakeside has an interest in the Condominium Declaration because it is not a party to the contract. As a nonparty, 701 Lakeside cannot demonstrate it is an "interested person" entitled to declaratory relief under R.C. 5311.23(B) in light of the Condominium Declaration. Here, R.C. 5311.233(B) only permits the PCUOA to commence claims for declaratory judgment or injunction regarding the Condominium Declaration. *Akerstrom* at ¶ 16. Additionally, PCUOA argues that 701 Lakeside is not an interested person because it can claim no injury caused by the PCUOA breaching the Condominium Declaration. PCUOA challenged 701 Lakeside's standing to pursue a claim under R.C. 5311.23(B), pursuant to the declaration.

**Standing**

{¶ 39} In the present case, the trial court found that 701 Lakeside lacked standing to seek a declaratory judgment under the terms of the Condominium Declaration. We agree.

{¶ 40} The doctrine of standing ensures the justiciability of a claim by determining whether a party has the requisite interest in a lawsuit to seek relief in court. *Link v. Wayne Ins. Group,* 2018-Ohio-3529, ¶ 13 (3d Dist.), *ProgressOhio.org., Inc. v. JobsOhio,* 2014-Ohio-2382, ¶ 7. Without standing a trial court may not consider the merits of a legal claim. A plaintiff establishes standing by demonstrating (1) a direct injury, (2) caused by a defendant's unlawful actions, and (3) that the injury is likely to be redressed by the relief sought by the plaintiff. *Windsor Realty & Mgt. v. Northeast Ohio Regional Sewer Dist.*, 2019-Ohio-3096,

¶ 13 (8th Dist.). "A person with standing has a real interest in the subject matter of the lawsuit." *Id.*

{¶ 41} To establish standing, 701 Lakeside must demonstrate a direct injury caused by PCUOA's breach of the contract and that a declaratory judgment determining 701 Lakeside's rights and obligations in light of the Condominium Declaration would redress the injury. When the condominium declaration was initially recorded, Pinnacle, not 701 Lakeside, was a party to the Condominium Declaration. Moreover, 701 Lakeside's only role in the declaration is that of an owner of the servient estate and whose rights and obligations are defined in the REAs. As previously determined, 701 Lakeside is not an interested person within the meaning of the statute, and the record fails to reflect any obligations owed to it by PCUOA within the terms of the Condominium Declaration. 701 Lakeside has failed to demonstrate that it is a party entitled to enforce the terms of the declaration, entitling it to relief under R.C. 5311.23(B).

{¶ 42} Furthermore, the trial court correctly dismissed 701 Lakeside's first cause of action for a declaratory judgment concerning its rights, status, or legal relation in light of the Condominium Declaration.

{¶ 43} Because the issue of standing is dispositive, this court will not address the underlying issue of res judicata. As previously stated, the trial court may not consider a legal claim where the complainant has no standing. Consequently, 701 Lakeside's assignment of error is overruled.

{¶ 44} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court found there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY